**STATE of Vermont v. Ricky D. PRATT**
**State of Vermont v. Edward J. Hodgin**

[795 A.2d 1148]

Nos. 01-067 & 01-068

January 28, 2002. The State appeals a decision of the Bennington Superior Court denying extraordinary relief. In its

decision, the court held that trial courts have the authority, within the confines of the original underlying sentence, to impose split-sentences on probation violators. On appeal, the State argues that the trial court's sentencing power, once it has found a violation of probation, is limited to the alternatives explicitly laid out in 28 V.S.A. § 304 and that those alternatives do not include suspending part of the underlying sentence. We agree and reverse.

Two separate cases with similar procedural histories have been consolidated in this appeal. In *State v. Hodgin*, the district court imposed an original sentence of nine to eighteen months for operating a vehicle under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201. The court suspended all but thirty days of the sentence and placed defendant on probation. More than two years later, after finding that defendant violated his probation, the district court imposed the underlying sentence, but suspended all but ninety days of the incarceration time and reimposed a term of probation with additional conditions.

In *State v. Pratt*, pursuant to a plea agreement, defendant pled guilty to violating an abuse prevention order in violation of 13 V.S.A. § 1030 and engaging in lewd and lascivious conduct with a child in violation of 13 V.S.A. § 2602, and the court sentenced defendant to two one- to three-year terms to be served consecutively. The court suspended both sentences completely and granted probation for each conviction. Three years later, defendant was convicted of failing to report as a sex offender under 13 V.S.A. § 5407. For this third offense, the district court sentenced defendant to a term of sixty days to two years, suspending all but sixty days of the sentence and granting probation for the remainder. Almost two years later, defendant admitted to violating conditions of probation imposed as part of each

sentence. For the offense of failure to report as a sex offender, the court maintained the original conditions of probation and left the suspended sentence unmodified. For the two earlier convictions, the court revoked probation and imposed the underlying sentences, but reduced the incarceration time for each offense to one year, to be served concurrently. The remainder of each underlying sentence was suspended, and the court reimposed probation with additional conditions.

Arguing that the new sentences were unlawful, the State sought extraordinary relief in the superior court for resolution of its claims. The superior court denied the petition, and the State now appeals. To be granted extraordinary relief under V.R.A.P. 21(b), the State must show that the district court's decisions were usurpations of judicial power, *clear* abuses of discretion, or arbitrary abuses of power. *State v. Forte*, 154 Vt. 46, 48, 572 A.2d 941, 942 (1990).

The State's argument is based on 28 V.S.A. § 304, which provides the options when a court finds a violation of probation:

(a) If a violation is established by a proceeding conducted in accordance with section 302 of this title, the court may, in its discretion, revoke probation and require the probationer to serve the sentence which was suspended or order that the sentence be served in the community pursuant to the provisions of chapter 6 of this title.

(b) As an alternative to revocation and imposition of sentence as provided in subsection (a) of this section, the court, in its discretion, after a violation has been established, may:

(1) Continue the probationer on the existing sentence; or

(2) Effect . . . necessary or desirable changes or enlargements in the conditions of probation; or

(3) Conduct a formal or informal conference with the probationer in order to re-emphasize to him the necessity of compliance with the conditions of probation; or

(4) Issue a formal or informal warning to the probationer that further violations may result in revocation of probation by the court.

28 V.S.A. § 304. The State claims that once the court decides to revoke probation the plain language of § 304(a) limits the court to imposing "the sentence which was suspended" or imposing a supervised community sentence. The court did neither here, instead exercising an unauthorized third option to fashion a new probationary sentence. The superior court found, and the defendants argue, that the language, when read together with 28 V.S.A. § 205(a), impliedly gives the option the sentencing court exercised.

This is a question of statutory construction. The courts have no authority to suspend a sentence or impose a sentence contrary to that authorized by the Legislature. See *State v. Pierce*, 163 Vt. 192, 196, 657 A.2d 192, 195 (1995). In looking at the legislative authorization, we must use familiar rules of statutory construction. Our principal goal is to effectuate the intent of the Legislature. *T. Copeland & Sons v. Kansa General Ins. Co.*, 171 Vt. 189, 193, 762 A.2d 471, 473 (2000). If the legislative intent is clear from the plain meaning of the language chosen, we enforce the statute according to its terms. *State v. LeBlanc*, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000). If different sections of statutes were drafted as part of an overall statutory scheme, we must read and construe them

together. *T. Copeland & Sons*, 171 Vt. at 193, 762 A.2d at 473-74.

In *State v. Therrien*, 140 Vt. 625, 627-28, 442 A.2d 1299, 1301 (1982), we described the options available under § 304 as "to revoke probation and require the original sentence to be served, continue probation, or alter the conditions of probation." See also *State v. Draper*, 167 Vt. 636, 637, 712 A.2d 894, 894-95 (1998) (mem.) (same). This list of options comports with the plain meaning of the language used by the Legislature. The options do not include the one attempted to be exercised here, revocation of probation and imposition of a different sentence from that imposed originally.

We do not reach a different conclusion when we read § 304 together with 28 V.S.A. § 205(a). Section 205(a) provides that "[a]fter passing sentence, a court may suspend all or part of the sentence" and place the defendant on probation. We held in *Therrien* that the sentence is "passed" when it is originally imposed and suspended, not when the court requires that it be served upon revocation of probation. 140 Vt. at 627, 442 A.2d at 1300-01. Except where there is a specific legislative authorization, a court cannot modify a sentence once the defendant has commenced to serve it. See *State v. Harbaugh*, 132 Vt. 569, 579-80, 326 A.2d 821, 827 (1974). The only authority is in 13 V.S.A. § 7042, and that authority expires ninety days after the sentence is imposed or ninety days after the judgment of conviction is final, whichever is later. See *Therrien*, 140 Vt. at 627, 442 A.2d at 1300; see also *State v. Priest*, 170 Vt. 576, 577, 743 A.2d 1072, 1073 (1999) (mem.) (on revocation of probation, "court's authority to alter a sentence, whether to increase or reduce it, is limited by 13 V.S.A. § 7042(a), *which allows alteration only within ninety days of the imposition of the original sentence.*") (emphasis added); *State v. Draper*, 167 Vt. at 637, 712 A.2d at 895.

The authority has expired in the cases before us. As a result, the sentencing court no longer had power under § 205 to suspend an additional part of the underlying sentence when it revoked probation.

The superior court held that in enacting § 304, and explicitly providing for five options when the State proves a violation of probation conditions, the Legislature's intent must have been to allow further suspension of parts of the underlying sentence to allow the sentence to fit the offender at the time the violation of probation is shown. It labeled any other conclusion as "absurd." We agree that allowing broad flexibility in sentencing is a preferable policy, and the sentences before us are reasonable, but we can find no indication that the Legislature intended to allow them. In fact, § 304(a) explicitly authorizes the court to impose a supervised community sentence, which is an alternative sentence to the original sentence that allows part of the sentence time to be served in the community. See 28 V.S.A. § 352. This provision shows that the Legislature knew that to provide an alternative to the underlying sentence it must explicitly authorize it, and that the Legislature considered at least one alternative. Because § 304 provides an explicit alternative to imposition of the underlying sentence, we cannot conclude that the failure to provide for the alternative the sentencing court used here was an oversight. See *In re Stowe Club Highlands*, 164 Vt. 272, 280-81, 668 A.2d 1271, 1277 (1995).

We cannot label the Legislature's limit absurd or irrational. With approval of the corrections department, the court could accomplish much of its purposes with a supervised community sentence pursuant to § 352. Moreover, in the cases before us, some of the actions that violated the probation conditions were crimes. The court could refuse to revoke probation, leaving the prosecutor to commence new criminal cases to obtain additional incarceration. The court would face no restrictions in sentencing for the new crimes.

We also cannot accept that we should deviate from the plain language of § 304(a) because, as defendants point out, § 304(b) was taken in large part from an external source, American Bar Association, *Standards for Criminal Justice: Probation* § 5.1(b) (Approved Draft 1970). Defendants argue that in cases where the Legislature attempts to integrate provisions of a model act with different locally-drafted provisions, we must conclude that the language of the model act is used for the same purpose as in the model act. See *In re Margaret Susan P.*, 169 Vt. 252, 264, 733 A.2d 38, 47 (1999); *State v. Papazoni*, 159 Vt. 578, 582, 622 A.2d 501, 503 (1993). Defendants point out that the ABA standards allow the court full flexibility on revocation of probation in fashioning an incarceration sentence. We are not construing the model act language as in *Margaret Susan P.* and *Papazoni*; the fact that a section we are not construing, § 304(b), is taken from a model act sheds no light on the proper construction of § 304(a).

The superior court should have granted extraordinary relief to strike the sentences imposed on defendants after the district court revoked probation, and to require the district court to chose a remedy authorized by 28 V.S.A. § 304.

*Reversed.*

**Skoglund, J.,** dissenting. The majority holds that after a finding that the probationer has violated the terms of probation, the court has only the options contained in 28 V.S.A. § 304, options that do not authorize a court to suspend a part of the underlying sentence if it revokes probation. Thus, under the majority's interpretation, the statutes at play restrict a trial court's ability to view the person standing before it, evaluate the situation presented by the violation

proved, and fashion an appropriate, just, decision on sentencing, one that continues the rehabilitation efforts for the probationer while providing the necessary degree of protection for the community. I cannot conclude that the Legislature intended this result.

Section 304 describes the options available to a court upon a finding that a condition of probation has been violated. Suspending part of the underlying sentence is not mentioned as an option. Recognizing that the statute did not expressly address the court's discretion to impose the underlying sentence with a new split portion to serve, the court below held "it is nevertheless apparent that such a disposition alternative fits logically along the continuum of outcomes established by subsections (a) and (b) of Section 304." I suggest that the legislative history of probation supports this logical conclusion.

As early as 1839, Vermont law provided a precursor of probation and/or parole for convicted persons. The norm upon conviction of a crime was imprisonment in the state prison, with the specific requirement that a convict "be confined to hard labor, during the whole of his imprisonment." Vermont Revised Statutes 1839, ch. 102, § 14. However, our laws provided that the governor "may discharge any convict in the state prison, . . . on such conditions as he shall adjudge proper." V.R.S. 1839, ch. 104, § 23. Should a convict so discharged "fail to keep and perform the conditions on which he is so discharged, he shall be proceeded with in the same manner, as if he had escaped from such prison." V.R.S. ch. 104, § 24. The statute governing escape, ch. 104, § 21, provided that when a prisoner escaped and was captured and returned to the prison, "the term, for which he was sentenced to be confined, shall be deemed as commenced at the time he is so returned, and he shall be confined, after his return, the whole term for which he was sentenced." Thus, while

the governor could give a convict an opportunity to leave the prison on a conditional basis, a convict so favored only had one chance to succeed, or he was back in the prison and starting his sentence all over again.

By 1898, trial courts in Vermont had statutory authority to suspend all or part of a criminal sentence and place the defendant on probation with such terms and conditions "as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist him to do so." *State v. Nelson*, 170 Vt. 125, 128, 742 A.2d 1248, 1250 (1999). And, by 1906, Vermont had created the position of probation officer whose job included investigating the circumstances of a particular case, the character and previous record of the accused, and making a recommendation to the court as to whether such person, if convicted, should be placed on probation. If the court agreed, the person so convicted would be placed in the care and custody of the probation officer. If such person violated any of the terms or conditions of his probation, the officer was directed to bring him before the court wherein he was convicted and sentenced. Thereafter, the court would "issue a mittimus for the execution of the sentence imposed." Public Statutes of 1906, chapter 265. There were no alternatives mentioned for a convict who violated the terms of his probation other than incarceration under the original sentence.

The Legislature added greater specificity in the General Laws of 1917. Upon a charge of violating a condition of probation, if the court or judges "are satisfied that the probationer has violated any of the conditions of his probation, said court or judges may order him committed on his original sentence." G.L. § 7305. At this time, the Legislature softened the consequences for a convict who failed to live up to his probation conditions. The law now provided that, if

the court determined that the interests of justice did not require the commitment of the probationer on his original sentence, the court could "recommit him to the custody of said probation officer upon the original conditions, or under such amended or additional conditions as they may see fit to impose." G.L. § 7305.

The language quoted above, governing probation violation and subsequent disposition, remained virtually unchanged until 1955, when the Legislature amended the disposition section, then appearing as V.S. 1947, § 10,021, to add the phrase underscored: "If such court or judges are satisfied that the probationer has violated any of the conditions of his probation, such court or judges may order him committed on his original sentence, *or any lesser sentence,* and a mittimus shall thereupon be issued for the execution thereof." 1955, No. 176. The language governing the situation when the interests of justice did not require the commitment of the probationer remained the same.

In the 1971 adjourned session, the Legislature amended the probation statutes and, in the process, the ability to order a probationer committed under "any lesser sentence," the authority contained in § 10,021 above, disappeared. While I agree that the Legislature deliberately chose to deny the court the ability to "resentence a probationer," I suggest that evolution of our probation statutes reflects the Legislature's growing understanding and appreciation of the benefits, to both the convict and society, of probation as a rehabilitative tool. Affording the trial court maximum flexibility in tailoring the consequences of a probation violation to the situation presented by splitting the original sentence merely supports that premise.

Our current probation statutes, found in chapter 5 of Title 28, were taken in part from external sources — the *American Bar Association Project on Standards for Criminal Justice Stan-* *dards Relating to Probation* (Approved Draft 1970) and the American Law Institute's *Model Penal Code.*[1] In cases where the Legislature attempts to integrate provisions of a model act in its statutory provisions, the Court should evaluate the language of the statute with an appreciation of the purpose espoused in the model act. See *In re Margaret Susan P.*, 169 Vt. 252, 264, 733 A.2d 38, 47 (1999); *State v. Papazoni*, 159 Vt. 578, 582, 622 A.2d 501, 503 (1993). The majority declines to consider the ABA standards because § 304(a) is not reflected in the language of the standards. However, our Legislature obviously relied heavily on those standards.[2] We can infer, therefore, that our Legislature agreed with the primary intent of the standards: to promote the use of probation as a rehabilitative tool — "odds

---

[1] For example, 28 V.S.A. § 255 is taken from 301.2(3) of the Model Penal Code, published in 10 U.L.A. 599 (1974). See also *State v. Papazoni*, 159 Vt. 578, 581, 622 A.2d 501, 503 (1993).

[2] Sections 303 and 304(b) mirror the language of the ABA standards. Section 5.1(b) of the standards reads:

It would be appropriate for standards to be formulated as a guide to probation departments and courts in processing the violation of conditions. In any event, the following intermediate steps should be considered in every case as possible alternatives to revocation:

(i) a review of the conditions, followed by changes where necessary or desirable;

(ii) a formal or informal conference with the probationer to re-emphasize the necessity of compliance with the conditions;

(iii) a formal or informal warning that further violations could result in revocation.

are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement. Banishment from society, in a word, is not the way to integrate someone into society." *ABA Project on Standards for Criminal Justice Standards Relating to Probation*, 1 (Approved Draft 1970).

In the 1972 rewrite of our probation laws, chapter 5 of Title 28, the Legislature outlined the practice and procedures of probation. The court may revoke probation and reimpose the original sentence to serve, it may sentence probationer to supervised community sentence or it may continue the probationer on probation with certain modifications and warnings. See 28 V.S.A. § 304. At the same 1971 adjourned session, the Legislature created the supervised community sentence as a sentencing option. See 28 V.S.A. chapter 6. The majority sees the authorization in § 304 to impose the supervised community sentence as proof that the Legislature knew it had to explicitly authorize any alternative to imposition of the underlying sentence. I find this evidence of legislative intent to be ambiguous at best.

When it has chosen to do so, the Legislature has made clear its intent to limit a court's sentencing authority. For example, it has explicitly prohibited the imposition of probation for any person sentenced as a violent career criminal. See 13 V.S.A. § 11a (court may not place on probation or suspend sentence of any person sentenced as violent career criminal). The Legislature requires the imposition of sentence after a violation of a deferred sentence agreement. See *State v. Rafuse*, 168 Vt. 631, 632, 726 A.2d 18, 19 (1998) (mem.) (deferred sentences "shall" be actively imposed in the event of a probation violation). In *State v. Nelson*, 170 Vt. 125, 742 A.2d 1248 (1999), the question presented was whether the

Legislature had intended to eliminate a trial court's discretion to prohibit a defendant from driving as a condition of probation for grave vehicular offenses. We wrote:

> Recognizing the importance of probation to a trial court's performance of its traditional judicial responsibility in sentencing, and the tolerance with which courts have traditionally viewed overlapping spheres of authority, this Court should not lightly infer a legislative intent to strip the trial courts of such power.

*Id.* at 129, 742 A.2d at 1251. We concluded that, had the Legislature actually intended to limit the discretion available to a trial court in fashioning conditions of probation, "it would have plainly said so." *Id.* The Court in *Nelson* declined to read such an intent into a statute which was otherwise silent on the subject. Because the statute does not prohibit the imposition of a new split on the original sentence, I would not read such a limitation into the statute.

In part, it is the provisions of chapter 6 of Title 28 that suggest to me that the Legislature did not intend to limit the court's exercise of discretion in sentencing after a violation of probation. First, the availability of the option of a supervised community sentence is limited. Pursuant to chapter 6, the court may only impose such a sentence if the commissioner of corrections recommends same. 28 V.S.A. § 352. Defendants convicted of certain crimes are ineligible for the supervised community sentence. Eligibility can depend on the mandatory minimum sentences required for programming, minimums that may not have been originally imposed by a sentencing court. See *State v. Priest*, 170 Vt. 576, 577, 743 A.2d 1072, 1073 (1999) (mem.). So, while it is an alternative to incarceration, it will not be available in all cases.

Second, it is important to note that, if a defendant violates a condition of sentence during the period of supervised community sentence, it is the parole board that "may revoke the offender's service of sentence outside a correctional facility and require the offender to serve *all or part* of the remaining sentence within a correctional facility." 28 V.S.A. § 371 (emphasis added). Under the majority's interpretation, we must conclude that the Legislature deliberately granted the parole board authority to do what the trial bench cannot. No correctional policy suggests why the Legislature would dispense discretion in that manner. I suggest it is logical to assume that the Legislature believed it was transferring to the parole board the same authority to deal with probation violators that resided in the trial court.

Chapter 6 further provides:

> As an alternative to revocation and return of the offender to a correctional facility for the remainder of the maximum term of imprisonment, the board in its discretion, after a violation has been established, may do one or more of the following: (1) Continue the offender on the same terms as existed prior to the violation. (2) Recommend to the commissioner modified or new conditions of the plan. (3) Conduct a formal or informal conference with the offender in order to reemphasize the necessity of compliance with the conditions of the offender's supervised community sentence.

28 V.S.A. § 372. These alternatives mirror those afforded the trial bench, lending more support to my supposition that the Legislature thought it was granting the parole board the same authority as was held by the trial bench.

A court's ability to shape a criminal sentence to the rehabilitative needs of the individual defendant is critical. If we examine the reasoning of the trial courts that imposed the challenged sentences, we find they employed the careful, reasoned approach to balancing the need to impose a "wake-up" call of incarceration and the desire to allow basically compliant probationers to continue the most effective rehabilitative sentence — probation.

The procedural histories of these two cases and the sentences imposed in each is as set forth in the majority opinion. In *State v. Hodgin*, the original sentence imposed was nine to eighteen months, all suspended but thirty days to serve on preapproved furlough on the Community Restitution Program followed by probation. Two and one-half years later, Hodgin was charged with violation of probation (hereinafter "VOP") by failing to keep in contact with the Probation Department, to complete his community work crew, to participated in an alcohol screening, and to pay fines and surcharges and that he had driven with a suspended license.[3] He admitted the VOP as charged.

A contested sentencing hearing was held at which the State argued that Hodgin's probation should be revoked and that he serve the underlying sentence. Hodgin argued that he was working full time and living a productive life, that outside of driving without a valid license, he had not violated any laws, and he asked for another chance to cooperate with probation. The court stated it believed some punishment was required for defendant's failure to complete his probation requirements, in part as an example to others on probation, but agreed it was appropriate to

---

[3] At the same time a separate criminal charge of driving without a valid license was filed (D.L.S. See 23 V.S.A. § 674).

give him one more chance with probation. Thus, the court reimposed the nine to eighteen month sentence, all suspended, but 90 days to serve.

In *State v. Pratt*, a case involving a charge of violation of an abuse prevention order and a charge of lewd and lascivious conduct with a child, the court sentenced Pratt to two one- to three-year terms to be served concurrently. The court suspended both sentences completely and granted probation for each conviction. Three years later, Pratt was convicted of failing to report as a sex offender under 13 V.S.A. § 5407. For this third offense, the district court sentenced defendant to a term of sixty days to two years, suspending all but sixty days of the sentence and granting probation for the remainder. Five years after the original sentence was imposed, Pratt was charged with VOP based on a threatening and harassing letter he sent to a Social and Rehabilitation Services caseworker that was written when he was off his medication. Pratt admitted the violation.

At the VOP hearing, the court heard from the probation officer, who recommended that Pratt serve the underlying sentence. The court also heard from the director of a program for mentally disabled individuals who had been involved with Pratt at least weekly since early 1998. She provided information as to Pratt's significant mental problems and the positive aspects of his behavior. The judge stated that he was weighing Pratt's history, mental handicaps, and treatment needs, with the impact on the victim's family and the protection of the public. He noted that Pratt needed to be punished for the letter, but did not want him to serve the maximum and then emerge from corrections system in three years with more serious mental health problems and without any supervision afforded by probation. The court specifically stated it was imposing this sentence, in part, to afford greater protection for the public and the victim once

defendant was released. In the case involving the failure to report as a sex offender, the court maintained the original conditions of probation and left the suspended sentence unmodified. For the two earlier convictions, the court revoked probation and reimposed the underlying sentences of one to three years and ordered Pratt to serve one year on each, concurrent, with credit for time served. The remainder of each underlying sentence was suspended, and the court reimposed probation with additional conditions.

Rather than finding that the judges engaged in a clear abuse of discretion and usurpation of judicial power in the sentences imposed in these cases, I suggest they did what judges are expected to do — weigh the situation and craft a response that is reasonable. I agree with the superior court that, as demonstrated by its heretofore regular use, "a new split to serve, combined with modified conditions of probation, can be the dispositional alternative best suited to balancing the need to punish the violation while reinforcing the rehabilitative goals inherent in the original sentence and justified by the evidence presented at the probation violation hearing." In 28 V.S.A. § 205, the Legislature gave the trial courts broad discretion in fashioning original sentencing decisions, allowing the courts to decide not just the length of the sentence but also to establish portions to serve under incarceration and portions to be suspended under conditions of probation. Unless the Legislature wanted to return to those days when convicts got one chance at probation and failure meant they served the sentence as imposed, an intention belied by the full probationary structure created in Title 28, I cannot conceive of a valid reason to deny the courts the same flexibility when confronted with a probation violation, limited only by a requirement that the original

sentence cannot be reduced, enlarged or altered in any way.

Finally, the majority notes that some of the actions that violated the probation conditions in these cases were crimes and the court would face no restrictions in sentencing for the new crimes. Even if I accept that premise, it will not always be the case. A probationer can be in violation of a probation condition by failing to attend alcohol treatment, for example. See, e.g., *State v. Millard*, 149 Vt. 384, 543 A.2d 700 (1988). By tying judges' hands and giving them two choices — incarcerate for the full underlying term or continue on probation with a stern talking-to — there will be unjust consequences for the probationer, the goals of rehabilitation will be stymied, and the public will either be building more prisons or living with people who have abused the privilege of probation without significant consequence. I ascribe to the Legislature an understanding that the public interest is best served by as reasoned and honest a sentencing judgment as is within the capacity of the trial judge to make, responsive to the surrounding circumstances and the person standing before the bench. Therefore, I do not believe the Legislature intended the result reached by the majority. I respectfully dissent.