NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 112

No. 2015-194

In re Mark Jankowski                                    Supreme Court

                                                       On Appeal from
                                                       Superior Court, Rutland Unit,
                                                       Civil Division

                                                       April Term, 2016

William D. Cohen, J. (motion for summary judgment); Cortland Corsones, J. (final judgment)

Allison N. Fulcher of Martin & Associates, Barre, for Petitioner-Appellant.

Rosemary M. Kennedy, Rutland County State's Attorney, and Ian C. Sullivan,
  Deputy State's Attorney, Rutland, for Respondent-Appellee.

PRESENT: Dooley, Skoglund, Robinson and Eaton, JJ., and Bent, Supr. J., Specially Assigned

¶ 1.    **DOOLEY, J.**   Petitioner appeals from a denial of his petition for post-conviction relief (PCR). We hold that petitioner is entitled to PCR to overturn his probation revocation. We remand for a new determination regarding whether his probation should be revoked and a new sentencing hearing if it is revoked.

¶ 2.    In November 2010, petitioner pled guilty to sexual assault on a child, and was sentenced to a term of five to twenty years, all suspended except for three years to serve, and probation. He was charged with violation of probation (VOP) in August 2011. A VOP merits hearing was held in December 2011. Following a contested evidentiary hearing, the court issued a written decision finding that petitioner had violated a condition of his probation. At the

conclusion of its decision, the court indicated that the matter would be "set for a sentencing hearing." At the sentencing hearing on March 13, 2012, the court asked if it would be a contested sentencing hearing, prompting counsel for the State and for petitioner to ask for time to confer. Their request was granted. Upon their return to court with petitioner, counsel informed the court that the parties had reached an agreement. Petitioner's sentence would be amended from a five-to-twenty-year split sentence with three years to serve to a four-to-twenty-years straight sentence to serve. His probation would be revoked. He would also be given credit for all time served. Defense counsel indicated that he had spoken with petitioner and stated that petitioner had agreed with the resolution. The court accepted the agreement.

¶ 3.    In March 2013, petitioner filed a pro se PCR petition, and later an amended petition through counsel, alleging that the VOP sentencing process violated his constitutional rights. He asserted that no sentencing hearing was held, he did not waive such hearing, and he was never personally addressed by the court. The PCR court granted summary judgment to the State. It concluded that petitioner's rights were satisfied when he was afforded a full evidentiary hearing on the merits portion of the revocation hearing. This appeal followed.

¶ 4.    Petitioner reiterates his argument that he was deprived of due process by the court's failure to hold a hearing on the sentencing portion of the VOP proceeding without a valid waiver. Petitioner contends that Vermont Rule of Criminal Procedure 32.1 codifies due process requirements established by the U.S. Supreme Court, and that the Court established that a probation revocation hearing includes not only a hearing on the merits of the violation, but also a hearing on whether revocation is warranted.

¶ 5.    We review the court's decision de novo, using the same standard as the trial court. In re Carter, 2004 VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281. Summary judgment is appropriate if there are no disputes of material fact and any party is entitled to judgment as a matter of law. Id.

2

¶ 6. We note at the outset the procedure by which a court may revoke a defendant's probation and impose the consequences of revocation. Following the summons or arrest of a probationer who has allegedly violated a condition or conditions of probation, a court must hold an evidentiary hearing that includes notice to the probationer, legal counsel if requested, and a record that establishes the alleged violation by a preponderance of the evidence. 28 V.S.A. § 301; id. § 302(a). This is the violation stage of the proceeding. If a violation is established, the court may elect to continue probation, modify conditions of probation, conference with the probationer, issue a warning, or require the probationer to remain on probation but serve a portion of her sentence. Id. § 304(b). The court may also, "in its discretion," revoke probation and order a probationer to serve the balance of her sentence in prison or in the community. Id. § 304(a). Probation shall be revoked only if the court finds, "on the basis of the original offense and the intervening conduct of the probationer," that confinement is necessary for public safety, the probationer needs treatment that can be best provided in a correctional facility, or a failure to revoke probation would "unduly depreciate the seriousness of the violation." Id. § 303(b). This is the disposition phase of the proceeding.

¶ 7. Defendant has not challenged the court's determination that he violated one of the conditions of his probation or the process by which the court reached that conclusion. The sole question is whether the court erred in accepting an alleged agreement under which defendant waived his right to contest whether his probation should be revoked, waived his right to address the proper sentence after revocation of probation, and waived his right to appeal, all without the written or on-the-record-agreement of defendant. The PCR court appeared to hold that once the court finds defendant violated a condition of probation, defendant no longer has any due process or rule-based procedural rights such that his right to personal agreement with a knowing and intelligent waiver of the right to contest probation revocation is unnecessary. We disagree for three reasons.

3

¶ 8.    Firstly, the PCR court appeared to believe that defendant's due process rights vanished following the evidentiary hearing on the alleged violation of a probation condition; in other words, because the VOP court afforded defendant notice, an opportunity to confront adverse witnesses, and a chance to present evidence during the violation stage of the probation revocation proceeding, there was no corollary obligation to provide any procedural rights thereafter. However, the procedural rights afforded to a probationer to permit her to contest allegations of a violation of probation extend from the initial charge through revocation; a delineation between adjudication and probation revocation has no basis in the law of probation—be it our criminal rules, our precedent, federal cases, or the law of our sister states.  Rather, the procedural rights afforded to a probationer are available until the court rules that probation will be revoked.

¶ 9.    Albeit in the context of parole revocation, the due process procedural requirements for revocation were first set forth by the U.S. Supreme Court in Morrissey v. Brewer.  408 U.S. 471 (1972).  In that case, the federal high court held that, following a preliminary hearing, a parolee may request a revocation hearing during which he "must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."  Id. at 488 (emphasis added); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (concluding Morrissey also applies to probation revocation proceedings).  The Morrissey Court recognized that the decision to revoke parole typically involves two steps: the factual question, wherein a court determines whether a parolee has "in fact acted in violation of one or more conditions of his parole," and the discretionary question, which seeks to answer whether the parolee should be recommitted to an institution or punished in some other fashion.  Morrissey, 408 U.S. at 479-80.  The U.S. Supreme Court emphasized that the second component was not so wholly a discretionary matter that procedural guarantees were "administratively intolerable."  Id. at 483.  In particular, the Court noted that society has an interest in rehabilitating parolees, and therefore an interest in preventing the

4

erroneous revocation of parole and in treating parolees with "basic fairness" which supports the recognition of due process rights throughout the proceedings.  Id. at 484.  To that end, the Court concluded that at a hearing to determine whether "the facts as determined warrant revocation," a court must, at a minimum, provide written notice of the claimed violations, disclose all evidence against the defendant, provide an opportunity to be "heard in person" as well as present witnesses and evidence, allow the defendant to confront adverse witnesses, preside over the case through a neutral and detached hearing body, and finally, provide a written statement articulating the evidence relied on and reasons for revoking parole.  Id. at 488-89.

¶ 10.    In Black v. Romano, the U.S. Supreme Court further elaborated on Morrissey with respect to the coverage and extent of the due process right.  471 U.S. 606 (1985).  In Black, the trial court revoked probation without expressly stating that it considered alternatives to revocation. The Court rejected the claim that due process required consideration of an alternative, but reiterated the due process procedural protections of Morrissey and their applicability at the revocation stage:

> Where such discretion [with respect to revocation] exists, however, the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.

Id. at 612.  The Court went on to hold that probationer received the process that was due because he received "the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke probation" and "he had a full opportunity to present mitigating factors to the sentencing judge and to propose alternatives to incarceration."  Id. at 616.

¶ 11.    The effect of the holdings in Morrissey, Gagnon, and Black on probationer's right to address whether probation should be revoked after a finding of violation was directly resolved in State v. Talton.  737 P.2d 409 (Ariz. Ct. App. 1987).  In Talton, the court held that under U.S. Supreme Court decisions, the probationer was constitutionally entitled to two hearings: one to

5

determine whether there was a violation of a condition of probation and one to determine whether probation should be revoked. Id. at 411. At the latter hearing, the probationer has the right to present mitigating evidence to argue that probation should not be revoked. Id. The mitigation can be part of an overall disposition hearing. Id. Failure to allow the probationer to have a mitigation hearing is a violation of due process that results in the reversal of a revocation of probation. Id. at 412; see also State v. Montoya, 596 P.2d 527, 529 (N.M. Ct. App. 1979); Brown v. United States, 900 A.2d 184, 192-93 (D.C. 2006) (concluding probationer constitutionally entitled to mitigation evidence after finding of violation).

¶ 12. Like the above courts, we cannot square the clear directives from the U.S. Supreme Court with the PCR court's decision. Under the PCR court's position, the probationer has no right to address whether probation should be revoked by either arguing against revocation or offering evidence or alternatives to revocation. Although we recognize that we have held that a probationer has no right of "allocution prior to the imposition of sentence" in a probation proceeding, the PCR court's position is nonetheless directly contradictory to the plain language of both Morrissey and Black. See State v. Germaine, 152 Vt. 106, 107, 564 A.2d 604, 605 (1989); V.R.Cr.P. 32(a)(1)(C). Under both Morrissey and Black, there is no distinction between the process due with respect to an adjudication that a violation has occurred and the process due with respect to the revocation decision.

¶ 13. Before closing on this point, we must address V.R.Cr.P. 32.1, the criminal rule on probation revocation. The rule is based on Federal Rule of Criminal Procedure 32.1 which in turn was adopted to implement Morrissey and Gagnon. See Advisory Committee Notes—1979 Amendment, F.R.Cr.P. 32.1. The applicable part of the federal rule governing "a final revocation hearing" covers "whether the probationer has, in fact, violated the conditions of his probation and whether his probation should be revoked." Advisory Committee Notes—1979 Amendment, F.R.Cr.P. 32.1(a)(2) (emphasis added). The rule is titled "Revocation Hearing" and contained no

6

procedural requirements with respect to the imposition of a sentence after a revocation decision is made.[1] The key section of the Vermont Rule, V.R.Cr.P. 32.1(a)(2), is similarly headed "Revocation Hearing" and there is no indication that it deviates from the Federal Rule by applying procedural rights only to the violation determination.

¶ 14. Based on the above discussion, we conclude that probationer undoubtedly had due process rights with respect to the revocation decision. This does not mean, however, that probationer is entitled to relief. We must determine whether probationer validly waived his due process rights. The dispositive question is whether the waiver of the right to contest revocation, the agreement to a sentence, and the waiver of the right to appeal could be effective without defendant's explicit consent.

¶ 15. In his brief to this Court, defendant argues that although he was present in court, no hearing was actually held; defendant's counsel and the attorney for the State informed the court, after a brief consultation, that an agreement had been reached and, consequently, defendant's probation was revoked and he lost any right to appeal the decision. Defendant contends that because he was never addressed by the court and never spoke during the proceeding, he "could not have waived his right" to contest the revocation of his probation. We need not decide whether a waiver can ever be deemed knowing and voluntary pursuant to the totality of the circumstances test if the defendant does not personally acknowledge the waiver in court because we conclude that in this case there is insufficient evidence to support the conclusion that defendant made a knowing and voluntary waiver.

---

[1] It now contains an explicit procedure for allocution after a number of federal courts held that a right of allocution was required by due process. See Advisory Committee Notes—2005 Amendments, F.R.Cr.P. 32.1(b). As we indicated in the text, we do not view the revocation stage as involving allocution so we are not relying on the decisions on which the federal amendment was based.

¶ 16. In neglecting to address defendant personally and inquire as to whether he consented to the agreement proposed by the attorneys, the court permitted defendant's attorney to assume a responsibility properly belonging to his client. State v. Duffy is controlling on this point. 151 Vt. 473, 562 A.2d 1036 (1989). In that case, during a violation of probation hearing, the defendant and the trial court engaged in a colloquy, during which the defendant, notwithstanding the court's willingness to "give him one more chance" to comply with conditions, asked to serve the balance of his remaining sentence. Id. at 475, 562 A.2d at 1037. The trial court accordingly revoked his probation and imposed the remainder of the previously suspended sentence. On appeal, the defendant argued that by "allowing [the] defendant to speak for himself at the probation hearing," the trial court granted an invalid waiver of counsel. Id. at 474, 562 A.2d at 1037. We disagreed, reasoning that:

> The problem with [the] defendant's argument here is that it confuses the role of the client with that of the lawyer. We have recognized the authority of a lawyer to act for a client and to control the procedural aspects of his client's case without his client's express consent. While the lawyer can control procedural matters, the client has control over the subject matter of litigation. Thus, it is the client, and not the lawyer, that must decide whether to settle and on what terms. In a criminal case, it is for the client to decide what plea should be entered.

Id. at 479, 562 A.2d at 1039 (quotations and citations omitted); see also Strickland v. Washington, 466 U.S. 668, 688 (1984) (noting that attorney must function as "assistant to the defendant" with a duty to "consult with the defendant on important decisions").

¶ 17. Under Duffy, the decision whether to waive probationer's due process right to contest revocation belongs to the client and not the lawyer. In this case, the waiver was done by probationer's lawyer, not the probationer, but the lawyer was ostensibly speaking for the client and within the hearing of the client.

¶ 18. Although this is an issue of first impression in Vermont, case law from the federal courts and our sister states is clear that waivers of the right to revocation hearings or to generally

contest charges of violation of probation must come from a probationer and must be knowing, voluntary, and intelligent.[2]

¶ 19.    Hersch v. State is instructive here.  562 A.2d 1254 (Md. 1989).  In Hersch, the Maryland Court of Appeals considered two cases that asked the court to determine whether an admission of violation and probation can be knowing and voluntary where a charge is not explained to a probationer, he "does not personally address the court," and the record is devoid of any evidence that he understands his due process right to contest the charges.  Id. at 1256.  In the first case, during the adjudicatory portion of a violation hearing, the court asked if the defendant admitted or denied the allegations and the defendant's attorney responded: "He admits, Your Honor."  Id. at 1255.  Following remarks from both attorneys on disposition and a brief allocution by the defendant as to his drug addiction, the court reimposed the original prison sentence.  In the second case, during a bond hearing in connection with a defendant's detention for an alleged probation violation, his attorney stated they "would enter an initial plea of guilty" to an amended count and admitted that his client had not obeyed all laws during his probation.  Id.  After both attorneys made arguments regarding sentencing and the defendant made a statement about his problems with drugs, the court imposed the initial sentence.  Id. at 1256.

¶ 20.    The Maryland appellate court reversed.  The court noted that while there are rights that "may be waived by the action or inaction of counsel," there remain "certain fundamental rights that can be waived only where the record affirmatively discloses a voluntary, knowing, and intelligent relinquishment of the right by the defendant himself."  Id.  The court acknowledged that admitting a violation of probation is not the "legal equivalent" of a guilty plea in a criminal case; nevertheless, it noted that the rights surrendered when a probationer admits a violation are

_____

[2] As stated in ¶ 15, we are not deciding in this case whether the defendant must personally agree to a waiver on the record.  Our holding is that whether or not a personal on-the-record waiver is required, the waiver in this case is inadequate.

9

"substantial." Id. at 1256-57. The court concluded that fundamental fairness required, if the right to contest violations of probation is waived, "the record must show that 'the charge was explained to the probationer in understandable terms and that his responses demonstrated that his actions were knowing and voluntary.' " Id. at 1258 (quoting Howlett v. State, 456 A.2d 375, 380 (Md. 1983)). The court noted that its approach found "substantial support in other jurisdictions," and cited cases from Michigan, Arizona, Pennsylvania, and Illinois affirming that fundamental fairness requires that a probationer "personally admit violation of probation on the record" as well as that he knows and comprehends the due process rights he is about to waive. Id. at 1258 (quoting People v. Allen, 248 N.W. 2d 588, 589 (Mich. Ct. App. 1976)); accord United States v. LeBlanc, 175 F.3d 511, 515 (7th Cir. 1999) (holding that waiver of right to revocation hearing under F.R.Cr.P. 32.1 and Morrissey "must be knowing and voluntary"); United States v. Pelensky, 129 F.3d 63, 68 n.9 (2d Cir. 1997) (concluding that while due process does not require formal waiver in probation revocation context, defendant's waiver of Rule 32.1 rights "must actually be knowing and voluntary"); United States v. Stocks, 104 F.3d 308, 312 (9th Cir. 1997) (finding waiver of Rule 32.1 rights must be knowing, intelligent and voluntary).

¶ 21.   We recognize that the knowing and intelligent waiver cases involved a waiver of the right to contest whether there had been a violation of a probation condition, as well as a waiver of the right to contest revocation based on the violation. We can find no precedents that address the exact facts of our case, where the waiver is only of the right to contest revocation. We see no reason for this distinction to dictate a difference in result. The constitutional basis for the underlying right is derived from the same U.S. Supreme Court precedents. We therefore hold that the waiver of the right to contest revocation and offer arguments and evidence in mitigation must be knowing, voluntary, and intelligent.

¶ 22.   There is another form of waiver in this case that adds weight to the requirement that it be knowing and intelligent. The accord between the State and defendant's counsel contained a

10

promise by defendant not to appeal or question the trial court's determinations regarding the VOPs. We note at the outset that the choice to take—or not take—an appeal is a "fundamental decision[]" regarding a case that a defendant "has the ultimate authority to make." Jones v. Barnes, 463 U.S. 745, 751 (1983); accord State v. Tribble, 2012 VT 105, ¶ 54, 193 Vt. 194, 67 A.3d 210 (noting that some decisions "are so important that an attorney must seek the client's consent in order to waive the right" (quoting Gonzalez v. United States, 553 U.S. 242, 250 (2008)). As this Court has noted before, such fundamental rights cannot be so easily discarded, absent a statement from defendant. See State v. Machia, 155 Vt. 192, 200, 585 A.2d 556, 560 (Dooley, J., dissenting) (disagreeing with majority opinion permitting defense counsel's stipulation to eleven-member jury on basis of defendant's implied consent and stating that because defendant "did not personally waive his right to a twelve-person jury, the waiver was constitutionally defective").

¶ 23. We note that the waiver of appeal rights contravenes our holding in State v. Buck, 139 Vt. 310, 428 A.2d 1090 (1981).[3] In Buck, partially as "the result of an 'agreement' between the defendant and the State," the defendant was placed on probation provided he accepted "definite restrictions upon the issues which [he] could raise before [this Court] in an appeal." Id. at 314, 428 A.2d at 1093. We reversed, holding that we could "neither condone nor enforce such a condition," as the right of appeal for criminal defendants is "conferred absolutely by statute" and "its restriction or prohibition as a condition of sentence deferment or probation cannot be reconciled with that statute." Id. at 314-15, 428 A.2d at 1093 (citing 13 V.S.A. § 7401). The restriction in the instant case is even more broad than that in Buck; rather than limiting defendant to appealing only particular issues, the provision would preclude defendant from engaging in "any

_____

[3] We noted that the holding in Buck was dicta in State v. Hance, 157 Vt. 222, 224, 596 A.2d 365, 366 (1991), but ultimately distinguished the holding on the waiver of the right of appeal. Whether the waiver of the right to appeal the VOP holding was valid is relatively unimportant in this case where defendant does not challenge that holding. The point is that a waiver of an important right of defendant was accepted with no confirmation that defendant agreed to waive that right and no assurance that the waiver was knowing and intelligent.

11

further activity, legal or otherwise" that seeks to appeal or question the court's determination as to the VOPs.

¶ 24. With the above standards in mind, what occurred here cannot pass constitutional muster. The sentencing hearing in this case lasted only ten minutes; seven of those were spent in a recess, during which the attorneys—who had not previously spoken—communicated about whether or not the hearing would be contested. Following the recess, the State's attorney described the agreement: the parties consented to revocation of probation with a four-to-twenty-year sentence to be imposed, with credit for all previous time served and agreed not to appeal or question the trial court's determinations regarding the VOPs. When prompted by the court, defendant's attorney said only that he had "talked about this proposal with [his] client, we feel that it is agreeable." Not only does the transcript bear little evidence that the attorney "fully advised defendant of his options" and informed him of all relevant considerations as to the revocation agreement—a seemingly impossible task, as the recess was only seven minutes, much of which was spent in conversation with the State's attorney—but it reveals defendant never said a word, and so did not communicate to the court the content of a decision that was his alone to make.[4] Duffy, 151 Vt. at 479, 562 A.2d at 1039.

¶ 25. The absolute invisibility of defendant in the record highlights the contrast between this case and those published decisions cited by the dissent, where even if a trial court did not specifically inform a probationer of his rights and no explicit waiver was made, the probationer nonetheless had an opportunity to address the court. See State v. Sellers, 649 S.E.2d 656, 727

---

[4] The uncertainty surrounding the degree to which defendant encouraged or even acquiesced to his attorney's assent belies the dissent's assertion that Duffy cannot control on the ground that Duffy merely resolved who may make the decision, not how that decision must be communicated to the trial court. Post, ¶ 35. Where there is little to no evidence in the record that defendant was solely responsible for this crucial decision, we must err on the side of safeguarding the distinct roles of lawyer and client.

(N.C. Ct. App. 2007) ("Defendant then addressed the court, admitted that he uses drugs, and apologized for 'whatever I did in Structured Day Program.' "); People v. Dale, 112 Cal. Rptr. 93, 94 (Cal. Ct. App. 1974) ("Appellant personally sought to convince the trial court that he should be recommitted to the California Rehabilitation Center."). Here, the trial court never addressed defendant personally with respect to the waiver and never made a determination that it was knowingly and intelligently made, an inquiry that was particularly warranted given the haste with which the "agreement" was put together.

¶ 26.    The dissent's reliance on a series of federal cases is also misplaced. Post, ¶ 38. The dissent appears to suggest that we seek to implement a formal waiver process or to force courts to invoke a "particular mantra" when considering whether a waiver is knowing, intelligent, or voluntary. In support of its position, the dissent has cited United States v. Hodges, and notes that a comprehensive Rule 11 colloquy is not required where a "totality of circumstances" shows waiver was knowing and voluntary. Post, ¶ 38 (quoting 460 F.3d 646, 652 (5th Cir. 2006)). We maintain that our above analysis is perfectly in keeping with Hodges. we conclude that, given the brevity of the hearing as a whole, and the conference between the attorneys in particular, combined with the fact that defendant never spoke or was addressed by the court, the totality of circumstances suggests that whether the waiver was voluntary, intelligent, and knowing was questionable.

¶ 27.    To that end, because we are not holding that Rule 11 must apply to a criminal defendant's waiver during a violation of probation hearing or that any kind of specific, formal procedure must occur, it is difficult to see the relevance of the cases the dissent cites. Those cases are clear that even though no on-the-record colloquy is required, the totality of the circumstances must nonetheless demonstrate that the waiver was knowing and voluntary, the basis of our decision here. See Pelensky, 129 F.3d at 68 n.9 (noting court's holding "[did] not address the situation where there is independent evidence in the record suggesting" admission and waiver of a hearing or attendant rights "was not knowing and voluntary—a situation that does not exist in the instant

case."); United States v. Melton, 782 F.3d 306, 312 (6th Cir. 2015) (concluding defendant's claim "fails under the totality of the circumstances standard" where there was record evidence that defendant reviewed supervised release violation report, "discussed it with his attorney and confirmed with the magistrate judge that he understood the report and still intended to admit to the violations," where judge "informed defendant the rights he would be waiving" and where judge "conducted a very thorough colloquy before it accepted defendant's admission" (quotations omitted)); Hodges, 460 F.3d at 652-53 (finding waiver of right to counsel knowing and voluntary where defendant "expressed not only an understanding of the purpose and possible repercussions of the hearing" but "specifically noted that the facts alleged against him constituted a class B violation," defendant was warned by court and his counsel of dangers of self-representation, court explained to defendant his rights relating to hearing, and court allowed defendant to consult with former counsel throughout hearing and transcript "indicates several points at which [defendant] did in fact consult with his former counsel"); United States v. Segal, 549 F.2d 1293, 1296 (9th Cir. 1977) (holding only that Boykin and Rule 11 protections do not apply to probation revocation hearings without engaging in totality of circumstances argument, as defendant did not argue plea was unintelligent and unknowing).

¶ 28.   As discussed supra ¶ 24, the record evidence—or dearth thereof—does not show us that defendant's waiver was knowing, intelligent, and voluntary.  See United States v. Correa-Torres, 326 F.3d 18, 23 (1st Cir. 2003) (determining no evidence to show defendant's waiver was knowing and voluntary where defendant "said very little over the course of the hearing," exchanges between court and defense counsel "did little to clarify matters," and "the record does not reflect either that the court advised [defendant] of his rights or that counsel reviewed those rights with him").

¶ 29.   This leads us to our final consideration.  That there was ever an "agreement" in the first place as to disposition highlights the fact that, ultimately, this was not a revocation hearing

but an agreement on an illegal new sentence, outside of the reconsideration period and in contravention of 28 V.S.A. § 304. When defendant initially pled guilty in 2010, he was sentenced to a term of five-to-twenty years, all suspended except for three years. Following the March 13, 2012, hearing, pursuant to the aforementioned agreement between the attorneys, the court amended defendant's sentence to a term of four-to-twenty years to serve, with credit for time already served. Setting aside the fact that the court never asked defendant whether he agreed and never ensured the waiver was knowing and intelligent, the VOP court had no authority to impose a different sentence. Under § 304, the Legislature has identified the specific options available to a court following the establishment of a violation of a probation condition. The court has discretion to "revoke probation and require the probationer to serve the sentence which was suspended or order that the sentence be served in the community." 28 V.S.A. § 304(a). Or, instead of probation revocation, a court may: (1) continue probationer on her existing sentence, (2) put in place "necessary or desirable changes or enlargements in the conditions of probation," (3) hold a conference with probationer in order to emphasize compliance with probation conditions, (4) issue a warning that probation may be revoked in case of further violations, or, (5) continue probationer's existing sentence and require probationer to serve a portion of his sentence. 28 V.S.A. § 304(b).

¶ 30. The fact that the parties agreed to the sentence—itself a questionable proposition, given the above analysis—is irrelevant. The court derives its sentencing authority from the Legislature, which chose to afford judges discretion under § 304 to select among the enumerated options. Nowhere in the statute is it indicated that a judge may fashion an entirely new sentence.

¶ 31. State v. Pratt fully resolves this issue. 173 Vt. 562, 795 A.2d 1148 (2002) (mem.). In Pratt, we considered two cases consolidated on appeal where the superior court had read § 304 in conjunction with 28 V.S.A. § 205(a), which provides for courts to suspend all or part of a

15

sentence "[a]fter passing sentence" to conclude that trial courts are permitted to impose split-sentences for probation violations. We reversed, holding:

> [C]ourts have no authority to suspend a sentence or impose a sentence contrary to that authorized by the Legislature. In looking at the legislative authorization, we must use familiar rules of statutory construction. Our principal goal is to effectuate the intent of the Legislature. If the legislative intent is clear from the plain meaning of the language chosen, we enforce the statute according to its terms. If different sections of statutes were drafted as part of an overall statutory scheme, we must read and construe them together.

> In State v. Therrien, 140 Vt. 625, 627–28, 442 A.2d 1299, 1301 (1982), we described the options available under § 304 as "to revoke probation and require the original sentence to be served, continue probation, or alter the conditions of probation." This list of options comports with the plain meaning of the language used by the Legislature. The options do not include the one attempted to be exercised here, revocation of probation and imposition of a different sentence from that imposed originally.

> We do not reach a different conclusion when we read § 304 together with 28 V.S.A. § 205(a). Section 205(a) provides that "[a]fter passing sentence, a court may suspend all or part of the sentence" and place the defendant on probation. We held in Therrien that the sentence is "passed" when it is originally imposed and suspended, not when the court requires that it be served upon revocation of probation. Except where there is a specific legislative authorization, a court cannot modify a sentence once the defendant has commenced to serve it.

Pratt, 173 Vt. at 564, 795 A.2d at 1150 (citations omitted).

¶ 32. In summary, defendant had a right to be heard and to contest the State's position on whether his probation should be revoked. The trial court held that he waived that right because of an agreement consented to only by his lawyer even though the decision whether to contest revocation must be made by probationer personally. As a result, there is no indication in the record that defendant's waiver, even if agreed to by him, is knowing and intelligent. Moreover, the court acted outside of its authority under § 304 in fashioning his sentence. Accordingly, we hold that defendant is entitled to post-conviction relief to overturn his probation revocation and remand for

16

a new determination on whether his probation should be revoked and a new sentencing hearing if it is revoked.

Reversed and remanded.

_____
Associate Justice

¶ 33. **BENT, Supr. J., Specially Assigned, concurring and dissenting.** I concur in the majority's holding that this Court looks to the totality of the circumstances to determine whether a defendant's waiver of due process rights in a probation revocation proceeding was knowing and voluntary. In so holding, the majority expressly declines to address defendant's claim that a knowing and voluntary waiver requires an in-court personal waiver by the defendant. I agree with this decision as well.

¶ 34. I write separately for two reasons. First, despite the majority's express reservation of the question of whether a personal in-court waiver is required, its decision can easily be read to suggest otherwise. Three statements in the majority opinion, in particular, require clarification. First, the majority states: "The <u>dispositive question</u> is whether the waiver of the right to contest revocation, the agreement to a sentence, and the waiver of the right to appeal <u>could be effective without defendant's explicit consent</u>." <u>Ante</u>, ¶ 14 (emphasis added). Plainly, that is <u>not</u> the question that determines how this appeal should be decided inasmuch as the majority states in the very next paragraph that we "need not decide whether a waiver can ever be deemed knowing and voluntary . . . if the defendant does not personally acknowledge the waiver in court." <u>Ante</u>, ¶ 15.

¶ 35. Second, the majority states: "In neglecting to address defendant personally and inquire as to whether he consented to the agreement proposed by the attorneys, the court permitted defendant's attorney to assume a responsibility properly belonging to his client. <u>State v. Duffy</u> is controlling on this point. 151 Vt. 473, 562 A.2d 1036 (1989)." <u>Ante</u>, ¶ 16. <u>Duffy</u> holds that the

17

decision to contest a revocation of probation is personal to the defendant. It does not hold that a defendant must personally waive the right in open court. The majority is therefore incorrect in stating that, by failing to "address defendant personally and inquire as to whether he consented to the agreement" the court contravened the holding in Duffy. This is important to understand because, if Duffy actually required that the trial court personally address the defendant to inquire as to whether he or she consented to the waiver, then the majority's reservation of the question whether "the defendant must personally agree to a waiver on the record," ante, ¶ 18 n.2, would be meaningless.

¶ 36.    Third, the majority's reliance on Hersch v. State, 562 A.2d 1254 (Md. 1989) as "instructive here" is unnecessary and misplaced. Ante, ¶ 19. First, that decision involved two consolidated appeals where, in each case, the defendant's attorney admitted a charged probation violation without giving any indication that the attorney had consulted with the defendant or that the defendant agreed with the admission. The facts here, as discussed below, are entirely distinguishable. More important, the Hersch court concluded that the waivers were ineffective because neither of the defendants had "personally admitted" the violations charged and "personally advised" the court that he wished to waive a contested hearing and admit the charge. Hersch, 562 A.2d at 1259. Given the majority's express reservation of the question whether a personal on-the-record waiver by the defendant is required, Hersch is not, in fact, instructive for our purposes here.

¶ 37.    Second, I disagree with the majority's application of the totality-of-the-circumstances test in this case. Although relatively sparse, the record is sufficient to demonstrate that defendant's waiver of a contested sentencing hearing was knowing and voluntary. At the scheduled hearing, defendant was present in court when the prosecutor explained to the trial court that the parties had formulated an agreement which provided for a stipulation to a revocation of probation, a reduction in sentence, and credit for all time served. The net effect was to move defendant to within several months of his new minimum sentence. This was plainly a favorable

18

outcome for defendant. Defendant's attorney then affirmatively represented to the court that counsel had "talked about this proposal with my client, we feel that it is agreeable." Counsel thereupon outlined the total credit for time served that defendant would receive under the agreement. At no point during this discussion did defendant, who had a lengthy criminal history which included a prior revocation of probation, raise any objection to the agreement. Indeed, apart from his general claim that a knowing and voluntary waiver requires a personal, in-court waiver by the defendant, defendant here has not claimed that his waiver was involuntary or unknowing, or that he was somehow prejudiced by the agreement. In none of his pleadings has defendant asserted that his attorney misrepresented to the court the fact that defendant was agreeable to the stipulation, or the terms of the agreement.

¶ 38.    In these circumstances, there is ample reason and good authority to conclude that the waiver was knowing and voluntary. See, e.g., United States v. Farrell, 393 F.3d 498, 500 (4th Cir. 2005) (upholding waiver of contested revocation hearing where defense counsel "explicitly stated, in [defendant's] presence, that [defendant] admitted to" the violations, defendant did not object to the assertion, and it was clear from the totality of the circumstances that the waiver was knowing and voluntary); United States v. Tapia-Escalera, 356 F.3d 181, 182, 194 (1st Cir. 2004) (rejecting defendant's claim that "there was no proper waiver of his right to a hearing to contest the charge" where defense counsel informed court that defendant admitted probation violation charge, noting that the defendant was present when counsel waived the hearing and had raised no protest, that defendant was "not a novice" in such matters, and that defendant had not "identified anything that he misunderstood"); United States v. Taylor, 747 F.3d 516, 518, 519 (8th Cir. 2014) (upholding waiver of contested revocation where defense counsel, with defendant present, "informed the court that his client admitted all the charged violations" of his supervised release, and rejecting defendant's claim that "a personal inquiry was required" to ensure that waiver was knowing and voluntary); People v. DeGarmo, No. A128716, 2011 WL 1885259, at * 6 (Cal. Ct.

19

App. May 18, 2011) (relying on <u>People v. Dale</u>, 112 Cal. Rptr. 93 (Cal. Ct. App. 1974) for proposition that "[i]n the context of a revocation of probation, a defendant can waive the formal requirements and admit a probation violation through the conduct of counsel and his own silence"); <u>State v. Sellers</u>, 649 S.E.2d 656, 657 (N.C. Ct. App. 2007) (rejecting defendant's claim that court violated his due process rights when it "relied on the assertions of his counsel and failed to make an adequate personal inquiry regarding his waiver and admissions," holding that "due process does not require that the trial court personally examine a defendant regarding his admission that he violated his probation"). Accordingly, I would affirm that portion of the judgment upholding the validity of the waiver.

¶ 39. I am authorized to state that Justice Skoglund joins this concurrence and dissent.

_____
Superior Judge, Specially Assigned