NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 108

No. 2020-042

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Aita Gurung | September Term, 2020 |

Samuel Hoar, Jr., J.

Thomas J. Donovan, Jr., Attorney General, and John D.G. Waszak, Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** The State appeals a trial court order denying its motion for a mental examination of defendant who is charged with first-degree murder of his wife and attempted first-degree murder of his mother-in-law. The State argues that the court had the discretion to order the evaluation and erred when it determined that, because a former prosecution and the current prosecution are the same proceeding, Vermont Rule of Criminal Procedure 16.1(a)(1)(I) does not allow for a second evaluation and that, even if the rule allowed for it, a second evaluation would not be reasonable. We reverse and remand.

¶ 2. Defendant, a native of Nepal, is alleged to have attacked his wife and mother-in-law with a meat cleaver on October 12, 2017. Defendant's wife did not survive the attack and her

mother suffered serious bodily injury. The Chittenden County State's Attorney charged defendant with first-degree murder and attempted second-degree murder. Defendant was arraigned on October 13 and ordered held without bail at the Vermont Psychiatric Hospital for the purpose of conducting competency and sanity evaluations.

¶ 3.     The court-appointed examiner, Dr. Paul Cotton, conducted the competency and sanity evaluations using a Nepali interpreter.[1] Dr. Cotton issued his report on December 10 and opined that, while defendant was competent to stand trial, he was insane at the time of the attack. In January 2018, defendant filed notice of an insanity defense and adopted Dr. Cotton as his expert witness. Defendant did not immediately concur with Dr. Cotton's competency finding, but after a second competency evaluation by Dr. Cotton and a hearing on the issue, both the State and defendant stipulated that defendant was competent to stand trial and the court made that finding.[2]

¶ 4.     In October 2018, the court granted the State's motion—opposed by defendant—for a mental-health evaluation of defendant by Dr. Albert Drukteinis. In November 2018, defendant provided notice that a second expert witness, Dr. David Rosmarin, had opined that defendant was insane at the time of the offense and provided video recordings of his evaluation of defendant to the State.

¶ 5.     Dr. Drukteinis conducted his interview and evaluation of defendant on November 7. He did not use an interpreter. In his report, he noted that, "there were many times that questions needed to be repeated or clarified, and some of [defendant's] inconsistent responses

---

[1] Defendant's primary language is Nepali, and he has limited proficiency in English. Interpreters were present at every court proceeding. At one hearing, two Nepali interpreters and defendant used a hearing device for sequential interpretation.

[2] The court held a hospitalization hearing in April 2018 as a result of Dr. Cotton's finding that defendant was insane at the time of the attack. With the parties' agreement, the court issued an order committing defendant to the care and custody of the Commissioner of Mental Health for a period not to exceed ninety days. The court further ordered that a hearing be held prior to any discharge of defendant. The hold-without-bail, competency, hospitalization, and placement orders are not at issue in this case and will only be addressed where relevant.

may have been partly due to a language barrier." Dr. Drukteinis ultimately opined that defendant was insane at the time of the attack.

¶ 6.    On May 31, 2019, the Chittenden County State's Attorney's Office filed a notice of dismissal without prejudice pursuant to Vermont Rule of Criminal Procedure 48(a).  After disclosing that both Dr. Cotton and Dr. Drukteinis had found defendant insane at the time of the attack, it explained: "The State does not have sufficient evidence to rebut this insanity defense. Therefore, the State cannot meet its burden of proving the Defendant is guilty beyond a reasonable doubt; rather, the evidence shows that the Defendant was insane at the time of the alleged offense."

¶ 7.    On September 11, after an independent review of the case, the Office of the Vermont Attorney General (AG) filed charges of first-degree murder and attempted first-degree murder against defendant, and the court found probable cause the same day.  Defendant again provided notice of an insanity defense.[3]  Defendant listed Dr. Drukteinis as a defense witness.

¶ 8.    At a hearing on November 4, the AG notified the court that it intended to seek a mental examination by its own chosen expert on the issue of sanity.  The AG filed its motion for mental examination on November 14.  In its filing, the AG argued that its prosecution of defendant was a new prosecution and that Rule 16.1(a)(1)(I) does not limit the number of reasonable examinations that the court may order.  The AG noted that if the court did not permit the AG to conduct an independent evaluation of defendant, "then in essence it is binding the Attorney General's Office to the previously obtained expert which [it] did not hire and [has] no involvement with."  The AG advised the court that the expert hired by the Chittenden County State's Attorney, Dr. Drukteinis, would not talk to the AG's office without a release from the State's Attorney and that no release was forthcoming.  Finally, the AG argued that another mental-health evaluation

---

[3] Thereafter, defendant's competency became an issue, defendant filed a motion for speedy trial and a motion to dismiss, and the parties and the court wrangled about a discovery schedule and the dissemination of records in the possession of Dr. Rosmarin and Dr. Drukteinis.  These events are not relevant to the issues before us.

was reasonable because the AG needed an expert with whom it could freely consult and that it "should be free of the encumbrances and decisions made in the prior separate State's Attorney's prosecution."

¶ 9. Defendant requested an evidentiary hearing on the AG's motion and the court granted the request, finding that there was "a substantial factual issue concerning the narrow question of the availability of Dr. Albert Drukteinis." Less than a week after the court issued this order, the AG also requested an evidentiary hearing and filed a notice that it intended to call an expert witness, Dr. Catherine Lewis "on the reasons why it would be reasonable and necessary for her to conduct her own separate in person [sic] examination of the defendant for purposes of evaluating whether or not he was sane at the time of the instant charged offenses."

¶ 10. In response to the AG's notice, the court issued the following entry order:

> In apparent response to the court's December 3, 2019 Entry Order, the State has given notice of its intention, "with the Court's permission," to call Dr. Catherine Lewis to provide expert testimony at [the hearing]. The court is hard-pressed to understand how Dr. Lewis's testimony will assist the court to answer the "narrow question of the availability of Dr. Drukteinis." Accordingly, while the court will not preclude Dr. Lewis's testimony out of hand, it reserves the right to limit that testimony to the extent that it bears on the question the court has identified above and in its December 3 Entry Order.

The AG responded to the court's entry order the next day, alerting it to the fact that its characterization of the issue before the court, the availability of Dr. Drukteinis, had "little relevance" to the motion filed by the AG. It reiterated that the issue before the court was not whether Dr. Drukteinis was available to the AG, and clarified that it intended to call Dr. Lewis as a witness on the pertinent issue of whether an evaluation of defendant was necessary and reasonable.

¶ 11. An evidentiary hearing on the AG's motion for a mental evaluation was held on December 13. The court began the proceeding by again identifying the issue before it as limited

to the availability of Dr. Drukteinis. After confirming that the court had received its response to the court's last entry order, the AG repeated that it intended to call Dr. Lewis to testify on issues highly relevant to the request for a mental-health evaluation. The AG again argued that the availability of Dr. Drukteinis was a secondary issue. After some discussion, the court identified the two questions presented for decision: Is Dr. Drukteinis available or not and, if he is or is not, what impact this has on the State's request for an evaluation by Dr. Lewis. The court confirmed that it was aware that Dr. Drukteinis had been listed as a defense witness, and the AG again stated its position that it should be able to call its own expert witness and that whether Dr. Drukteinis was available to the AG had no bearing on that issue. The court responded: "That is a question of law for the court. It's not something we need to resolve factually here today. So the question is, is Dr. Drukteinis available to the State or not." The AG continued to argue to the court that it would be reasonable for Dr. Lewis to evaluate defendant for sanity.

¶ 12. After much back-and-forth concerning the focus of the hearing, the AG informed the court that Dr. Lewis had reviewed Dr. Drukteinis's report and that she would testify about the methodologies used and explain how she would approach an evaluation. The court then summarized the AG's argument:

> [T]he point would be that even if Dr. Drukteinis were available to the State, based upon your communications with Dr. Lewis, the State has not only the obvious concern about the ultimate opinion but also about the methodology that underlies the opinion . . . and so would like the benefit of an expert in whose methodology it has greater confidence?

The AG confirmed this was accurate. The court then indicated it was content to decide the motion based upon the representation that one of the reasons the AG requested an evaluation for sanity was due to concerns it had with the methodology employed in the prior evaluation.

¶ 13. Defendant, with the court's prompting, agreed that the court could accept the AG's representation that it had concerns with Dr. Drukteinis's methodology and that was the basis for

5

requesting another evaluation. As a result, the court decided it did not need to hear Dr. Lewis's testimony and would consider the representation in its decision. The AG repeated its request to call Dr. Lewis as a witness in support of its motion. When the court made clear that it did not think Dr. Lewis's testimony was relevant and agreed that the AG's representation could include that Dr. Lewis had insufficient information at that time to evaluate defendant, the AG relented. The court denied the AG's request to also consider as part of its representation that there were inadequacies in Dr. Drukteinis's report.

¶ 14. In a December 19 decision, the court denied the AG's motion for a mental-health evaluation. It held that the clear and unambiguous language of Rule 16.1(a)(1)(I), that the prosecution is entitled to a mental-health evaluation, permits only one evaluation by the State. The court found it irrelevant that the AG, rather than the State's Attorney, was the current prosecuting entity because, it reasoned, the State of Vermont was still prosecuting defendant. Therefore, the court found that the State had already had its mental-health evaluation and was not entitled to another. The court characterized the AG's request as "a second bite at the evaluation apple." It concluded that:

> Dr. Drukteinis was, and remains, the State's expert; if it had or has concerns with his methodology, it is free to discuss those concerns with him to determine the extent to which they may affect—or even change—his opinion. In short, these concerns do not warrant subjecting [defendant] to a second, court-ordered examination.

¶ 15. Finally, the court found that the AG had failed to articulate any prejudice that could result from the court's decision because it had not argued that Dr. Drukteinis had an insufficient opportunity to evaluate defendant or that this opportunity was limited. In addition, the court noted, the AG did not explain how any prejudice overcame the language of the rule and the constitutional protections afforded to defendant. The court cited State v. Bushey, 147 Vt. 140, 144, 513 A.2d 1177, 1180 (1986), for the proposition that the Fifth Amendment privilege against self-incrimination applies in compelled pretrial psychiatric examinations. In conclusion, the court

6

indicated it was questionable whether it had the discretion to order a second evaluation. In support, the court noted the decision in State v. Sharrow, 2017 VT 25, ¶ 13, 205 Vt. 300, 175 A.3d 504, which held that a court does not have authority to order a competency evaluation by a State expert where the statute clearly authorizes only one court-ordered evaluation.[4]

¶ 16. On January 2, 2020, the AG filed a motion for reconsideration, or in the alternative, for permission to appeal. It argued that the court should have allowed it to present Dr. Lewis's testimony regarding her concerns with the methodology employed by Dr. Drukteinis. It noted that the court had used interpreters at every hearing in defendant's case and that Dr. Weker had done so during his competency evaluation, but Dr. Drukteinis had failed to use an interpreter during his sanity evaluation of defendant, calling into question the validity of his opinion. The AG contended that it had no part in hiring Dr. Drukteinis, that his testimony would be inadmissible under Vermont Rule of Evidence 702 because it was unreliable due to his failure to use an interpreter, and that the evaluation was based upon "the complete inadequacy of the methodology underlying that opinion, particularly his failure to use a translator." Finally, the AG contested the court's interpretation of Rule 16.1(a)(1)(I) and its conclusion that it permitted only one sanity evaluation. The AG requested another evidentiary hearing with the opportunity to present Dr. Lewis's testimony, or in the alternative, permission to file an interlocutory appeal of the order denying the motion for a mental-health evaluation. The AG submitted a letter from Dr. Lewis with its motion, which

---

[4] Although our decision does not require us to address the court's citation to or reliance on these two cases, it is important to note that neither case is applicable to the circumstances in the instant case. In Bushey, we held that the Fifth Amendment privilege applies in compelled psychiatric evaluations. 147 Vt. at 144, 513 A.2d at 1180. However, the defendant in that case was subjected to a court-compelled sanity evaluation and, unlike the defendant here, was not relying on an insanity defense. In Sharrow, the evaluation at issue pertained to competency, not sanity, and we concluded that the State is not entitled to its own competency evaluation pursuant to the plain language of 13 V.S.A. § 4814(a). 2017 VT 25, ¶ 7. This holding has no bearing on whether the court was authorized to allow the AG to conduct a mental-health evaluation for sanity pursuant to Rule 16.1.

outlined her concerns with the methodologies employed by Dr. Drukteinis, including his failure to use an interpreter during the evaluation.

¶ 17.   On February 5, the court denied the motion for reconsideration.[5]  It again rejected the AG's assertion that Rule 16.1(a)(1)(I) did not preclude a second mental-health evaluation.  The court reviewed the procedural history of the AG's motion for an evaluation and noted that it had not requested a hearing when first moving for a new psychiatric examination and had provided no factual basis for the request for a second evaluation, other than that Dr. Drukteinis was somehow unavailable.  The court recognized that the AG had given notice prior to the hearing that it intended to call Dr. Lewis as a witness on the reasons it would be reasonable and necessary for her to conduct her own separate, in-person examination but again questioned how this related to the issue of whether Dr. Drukteinis was available to the AG.  The court found that the AG identified no disputed issue on which Dr. Lewis's testimony might bear but also recognized that the AG had noted at the hearing that it had a concern with Dr. Drukteinis's methodologies.  The court pointed to the fact that the AG had failed to move to preclude Dr. Drukteinis's opinions, "much less submitted competent evidence to support such a request."  It found that Dr. Lewis's letter came too late and did not persuade the court to allow another evidentiary hearing.  The court concluded that, even if it had the discretion under Rule 16.1(a)(1)(I) or 13 V.S.A. § 4814[6] to order defendant

---

[5]   The tone of the court's order is unfortunate.  It contains personal observations and opinions that were not necessary for the resolution of the issues before it.  In making a decision, a judge must act with "calm reflection to determine that it is correct, fair and serves the ends of justice."  See <u>State v. Therrien</u>, 140 Vt. 625, 627, 442 A.2d 1299, 1301 (1982) (per curiam).

[6]   The court relied solely on the language in the rule, rather than the statute, in its initial order.  In the reconsideration order, it referenced § 4814 only in passing.  The issue presented in this case is based only upon the court's interpretation of Rule 16.1(a)(1)(I).

8

to submit to another evaluation, it would not be reasonable to do so because he had already been ordered twice to sit for psychiatric examinations.[7]

¶ 18. Finally, the court granted the AG's request for an interlocutory appeal under Vermont Rule of Appellate Procedure 5.1 and certified the following questions to this Court:

> (1) [W]hether, after reinstitution of a prosecution previously dismissed without prejudice, the Superior Court has authority under 13 V.S.A. § 4814(a)(1) and V.R.Cr.P. 16.1(a)(1)(I) to order a second psychiatric evaluation; and (2) whether, assuming it enjoys such authority, this court abused its discretion by declining to order such an evaluation in this case.

¶ 19. On appeal, the AG advances three arguments. First, the AG's prosecution is a second prosecution and not the same prosecution as that conducted by the State's Attorney. In any event, Rule 16.1(a)(1)(I) does not limit the State to only one examination. Second, in light of defendant's language barriers and Dr. Drukteinis's failure to use an interpreter, its request for an evaluation is reasonable. Finally, by refusing to take testimony on the motion and failing to address the substantive arguments brought before it, the court abused its discretion in denying the AG's request for a sanity evaluation by its own expert.

¶ 20. Defendant submits that there has only been one prosecuting authority here: the State of Vermont. He argues that the court did not err in strictly interpreting the relevant rule and concluding that it allowed for only one mental-health evaluation by the State. Even if the court had the authority to order a second evaluation at the State's request, it did not abuse its discretion in denying the request.

¶ 21. We conclude that the court erred as a matter of law in its determination that Rule 16.1(a)(1)(I) limits the State to only one mental-health examination of a defendant in a criminal

---

[7] The court acknowledged that defendant had participated in two additional evaluations conducted by his own experts.

proceeding.[8] We also find that the trial court abused its discretion in ruling on the AG's motion without allowing it to present evidence on the reasonableness of its request and, therefore, reverse and remand.

## I. Rule 16.1(a)(1)(I)

¶ 22. Rule 16.1(a)(1)(I) provides:

> Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, upon motion and notice a judicial officer may require the defendant to submit to a reasonable physical or medical inspection of his body or, if notice is given by the defendant that sanity is in issue or that expert testimony will be offered as provided in Rule 12.1, to a reasonable mental examination by a psychiatrist or other expert.

The trial court concluded that the language of the rule is clear and unambiguous and that "a" reasonable mental examination means "one" reasonable examination. The court's analysis went no further.

¶ 23. "Issues of statutory interpretation are subject to de novo review." Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893. Procedural rules have "statutory force." State v. Lapham, 135 Vt. 393, 398, 377 A.2d 249, 252 (1977). The interpretation of a procedural rule is accordingly a question of law which we also review de novo. State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126. "In interpreting a court rule we generally employ tools similar to those we use in statutory construction." In re Oden, 2018 VT 118, ¶ 8, 208 Vt. 642, 202 A.3d 252 (quotation omitted). We look first to the plain language of the rule, and "the plain ordinary meaning of the words control[s]." State v. Villar, 2017 VT 109, ¶ 7, 206 Vt. 236, 180 A.3d 588 (citing State v. Yudichak, 147 Vt. 418, 420, 519 A.2d 1150, 1151 (1986) (per curiam)).

¶ 24. Because we are using tools similar to those used in statutory construction, 1 V.S.A. § 175 is an appropriate guide. It dictates that, when construing a statute, "[w]ords importing the

---

[8] Because we reach this conclusion, we need not address whether the AG's prosecution is a separate or the same prosecution as that conducted by the State's Attorney.

singular number may extend and be applied to more than one person or thing; words importing the plural number may be applied as if singular." We relied on identical language, formerly found in 1947 V.S. § 26, in concluding that the words "the defendant" in a statute requiring a plaintiff to provide the defendant sufficient sureties prior to the issuance of a writ of summons or attachment mean each of the defendants and may be used as a collective noun, including all parties defendant. E. R. Wiggins Builders Supplies, Inc. v. Smith, 121 Vt. 143, 146, 149 A.2d 360, 362 (1959). We noted that the application of this tool is acceptable, "except where a contrary intention plainly appears." Id.

¶ 25. Other jurisdictions have similarly interpreted statutory words that employ the singular form. The Court of Appeals of Utah applied a similar tool of construction in interpreting a law which provides for an award of attorney's fees to a defined class of defendants when "an" information is filed against such a person and the indictment or information is later quashed or dismissed. DeLand v. Uintah County, 945 P.2d 172, 174 (Utah Ct. App. 1997). The appellant argued that he was entitled to attorney's fees because three out of six counts in the information were dismissed and the statute's plain language indicated that "each count is effectively its own separate information."

¶ 26. Using Utah's equivalent of 1 V.S.A. § 175, Utah Code Ann. § 68-3-12(1)(b), which the court referred to as "a cardinal rule of statutory construction," the court held that even though the term "Information" was defined in singular terms, i.e., as "an accusation, in writing, charging a person with a public offense," an award of attorney's fees was precluded if some, but not all, counts in an information are dismissed. DeLand, 945 P.2d at 174 (quoting Utah Code Ann. § 77-1-3). It reasoned that an information often contains multiple counts and that the attorney's fees statute's references to "any act or omission," "an accusation," and "a public offense" should be read to include "any acts or omissions," "accusations," and public offenses." Id. The court noted that the Legislature "is presumed to have used the involved terms advisedly and could easily have

11

incorporated language allowing for recovery of attorney fees when separate charges or counts in an information or indictment are dismissed." Id.

¶ 27.  In a case very similar to the fact pattern presented here, a New York trial court construed a statute allowing for "an" order for examination of a defendant who serves notice of intent to present psychiatric evidence by "a" psychiatrist or licensed psychologist. People v. Williams, 505 N.Y.S.2d 807, 807-08 (Sup. Ct. 1986) (quoting N.Y. Crim. Proc. Law § 250.10(3)). Relying on the singular language, the defense argued that the prosecution was not entitled to a second mental health evaluation after the first trial ended in a mistrial. Id. at 808.

¶ 28.  The court rejected this argument, relying in part on a statutory construction law almost identical to our own, which provided: " 'Words in the singular number include the plural, and in the plural number include the singular.' " Id. at 809 (quoting N.Y. Gen. Constr. Law § 35). The court stated:  "This does not mean that always and under all circumstances a word in the singular has a plural meaning, but that, if what otherwise appears to be a fair and reasonable construction requires such enlarged meaning of the word, it will be adopted." Id.  The court concluded that § 250.10(3) allows for more than one evaluation:

> To construe this section otherwise would be to eliminate a second examination if the defendant's first conviction were reversed; if the defendant refused to submit to an examination; if the defendant refused to cooperate in an examination; and if a new trial were ordered after a lengthy appellate process was completed.

¶ 29.  We find no evidence of contrary legislative intent that would preclude us from applying this "cardinal rule" of statutory construction to an analysis of Rule 16.1(a)(1)(I) and concluding that the criminal rule does not prohibit the evaluation requested here.  As noted in Williams, there are many situations in which a second evaluation might be reasonable and necessary.  505 N.Y.S.2d at 809.  These eventualities might also include, among many others, the physical unavailability of the original evaluator or the subsequent discovery of a conflict which would preclude the evaluator from participating in the case.  The trial court's interpretation of the

rule would prohibit a mental health evaluation in a situation in which one is reasonable and necessary.

¶ 30. We presume the drafters of Rule 16.1(a)(1)(I) used the involved terms advisedly and could easily have incorporated language that prohibited a second mental examination had that been the intent. See State v. LeBlanc, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000) (declining to expand language of 23 V.S.A. § 1210(d) by adding words Legislature intentionally omitted). For the reasons we have stated, it is unlikely that the drafters intended to limit the availability of more than one mental examination. The plain language of the rule speaks for itself and contains no such prohibition. Accordingly, we hold that Rule 16.1(a)(1)(I) does not prohibit the State in a criminal prosecution from seeking more than one reasonable mental examination.[9]

## II. Dr. Lewis's Testimony

¶ 31. We next turn to the AG's argument that the trial court abused its discretion by refusing to allow it to present the testimony of its expert witness, Dr. Lewis, at the hearing on its motion for a mental examination of defendant. The AG also argues that its request for an examination was reasonable. To support a claim of abuse of discretion, a party must show that the court failed to exercise its discretion or that its discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable. In re T.S., 144 Vt. 592, 594, 481 A.2d 21, 22 (1984). We conclude that the trial court abused its discretion in precluding the AG from presenting its expert testimony and remand for the trial court to conduct a new hearing at which the parties may present evidence as to the reasonableness of a mental examination pursuant to Rule 16.1(a)(1)(I).

---

[9] Consistent with a reasonableness standard, to secure a second evaluation, the State would have to show that it is reasonably necessary for reasons like, but not limited to, those noted above. See supra, ¶¶ 27-28.

¶ 32. In its initial written motion for the examination, the AG argued that it should not be bound by the opinion of an expert it did not secure, that the State's Attorney's expert would not communicate with the AG without a release, and that it should not be required to adhere to decisions made by the State's Attorney. However, after the court granted defendant's request for an evidentiary hearing, the AG made the same request and noted its intention to call an expert witness on the reasons why it would be reasonable and necessary for her to conduct her own mental examination. The court's response limited the issue at the hearing to the "narrow question of the availability of Dr. Drukteinis" but did not preclude the presentation of Dr. Lewis's testimony altogether.

¶ 33. The next day, the AG made clear that Dr. Drukteinis's availability was not the only issue and that it wanted to present testimony on the issue of whether an evaluation of defendant was reasonable and necessary. At the hearing, however, the court prohibited the AG from presenting Dr. Lewis's testimony even after the AG repeatedly informed the court that it had concerns about the methodologies employed by Dr. Drukteinis. The court ultimately indicated it would consider only the AG's representation that it had concerns about Dr. Drukteinis's methodologies and that Dr. Lewis had insufficient information to conduct her own analysis. The court refused to consider the AG's representation that there were inadequacies in Dr. Drukteinis's report.

¶ 34. The trial court erred when it precluded the AG from presenting testimony from Dr. Lewis and limiting the AG's evidence to mere representations that the court itself formulated. The court had, early on, granted a request for an evidentiary hearing. The AG gave timely notice to the court that it intended to present the testimony and the reasons therefore, which were not limited to the availability of the State's Attorney's expert and were germane to the issue before the court.

¶ 35. The task before the court at the hearing was to decide whether to allow a reasonable mental examination, yet it precluded the AG from presenting pertinent evidence on this very issue.

Complicating matters further, in its ruling on the AG's motion to reconsider the denial of its request for an examination, the court acknowledged that the AG had given notice prior to the hearing that it intended to call Dr. Lewis on the reasons it would be reasonable and necessary for her to conduct her own examination and recognized that the AG had alerted the court to concerns about Dr. Drukteinis's methodologies. Despite this, the court refused to grant the AG's request for another hearing.

¶ 36. A court abuses its discretion by exercising it for reasons clearly untenable or to an extent clearly unreasonable, and a party alleging an abuse of discretion has the burden of proof. State v. LaGoy, 136 Vt. 39, 41, 383 A.2d 604, 606 (1978). "[S]o long as a reasonable basis for the court's discretionary action is demonstrated, this Court will not interfere." Id. The AG has met its burden. Once the court granted the defendant's request for an evidentiary hearing, the AG gave timely notice of its intent to call its witness at this evidentiary hearing to establish concerns about Dr. Drukteinis's methodologies, and the AG made a proffer to the court demonstrating how Dr. Lewis's testimony was relevant to the reasonableness of a mental examination. The court erred by refusing to allow the presentation of this evidence. There was no reasonable basis for this decision and it amounted to an abuse of discretion.

The court's decision that Vermont Rule of Criminal Procedure 16.1(a)(1)(I) prohibits more than one mental examination of defendant is reversed. The court's decision to preclude the AG from calling its witness at the hearing on its motion for mental examination is reversed. The matter is remanded for the court to conduct another hearing at which the parties may present evidence as to the reasonableness of a mental examination.

FOR THE COURT:

_____

Associate Justice

15