VERMONT SUPERIOR COURT

Windsor Unit
12 The Green
Woodstock VT 05091
802-457-2121
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 22-CV-03785

| Brian Mattson v. Vermont Department of Corrections |
| --- |

Opinion and Order on Appeal of Furlough Revocation

In this Vt. R. Civ. P. 74 appeal, Brian Mattson challenges a Department of Corrections ("DOC") case-staffing decision, pursuant to 28 V.S.A. § 724. Appellant timely filed his appeal, and the Court held a hearing on the matter on November 15, 2022. Appellant was present at the hearing and was represented by Emilia King-Musza, Esq. Appellee DOC was represented by Assistant Attorney General Patrick Gaudet. Based upon this Court's *de novo* review of the record and the credible evidence admitted at the hearing, the Court makes the following determinations.

I.     Background, Underlying Decisions, and Trial Court Hearing

On September 12, 2022, Appellant was placed on furlough. On September 29, 2022, DOC received a report that Appellant had violated a final abuse prevention order, and had been arrested and cited for that violation. The final abuse prevention order had been awarded to Appellant's ex-wife, and it required that Appellant stay a certain number of feet from her. The charges were that he violated that proximal limitation, and, given his criminal history, it was a felony offense. DOC rearrested Appellant for a violation of Furlough Condition No. 1,

1

which precludes a fuloughee, *inter alia,* from being charged or cited for or committing a crime.

DOC afforded Appellant a hearing in connection with the alleged furlough violation. At the hearing, the underlying police reports and witness affidavits in connection with the alleged violation of the abuse prevention order were admitted. Appellant also testified. The hearing officer found that Appellant had violated his furlough by being cited for the felony criminal offense of violating a relief from abuse order.

The matter then proceeded to DOC Staffing to determine the length, if any, of Appellant's furlough interrupt. The Staffing reviewed the record and determined that the above behavior amounted to a "significant violation," per DOC regulation because it was a citation for both a felony and a listed offense[1] and because the underlying conduct posed a risk to an identifiable victim, Appellant's ex-wife. *See* DOC Directive 430.11. (In fact, per that Directive, any one of those determinations would have been enough for this to be considered a significant violation. *Id*.) Appellant was also a "high-risk" offender under the Ohio Risk Assessment System (ORAS) scale employed by DOC. He additionally had an elevated domestic violence assessment score and still had to complete domestic violence programming. Lastly, he had a criminal history that included domestic assault, violation of an anti-

---

[1] As Appellant had previously been convicted of violating an abuse prevention order, a second violation is a felony, 13 V.S.A. § 1030((b); and violation of a final abuse prevention order is a listed offense, 13 V.S.A. § 5301(7)(V).

stalking order, violation of an abuse protection order, aggravated disorderly conduct, and past violations of probation in New Hampshire.

Through Directive 430.11, DOC employs a standardized "grid" to assess the length of a person's interrupt. Here, based specifically on the nature of the underlying conduct and his high ORAS score, Directive 430.11 recommended a one-year interrupt. The Staffing decision followed that recommendation.[2]

Appellant appealed.

At the hearing on appeal, Appellant testified. He did not address the underlying conduct that led to his new criminal charges. He did aver that he had been taking steps to address his past criminal behavior while he was on furlough. He had worked with Pathways to get an apartment, created a support system with family and friends, met with a caseworker two times each week, set up a therapist with Health Care & Rehabilitation Services, located a substance abuse counselor, fostered a good working relationship with his probation officer, and had begun to look for a job. He indicated his desire to return to the community to continue with those endeavors.

II.     Standards

Vermont law provides that DOC may release an inmate from prison and place him or her on community supervision furlough if the inmate has served his or her minimum sentence and agrees to comply with such conditions as DOC, in its

---

[2] Though the grid provides some standardization, the Directive also allows staff to consider other aggravating and mitigating factors in each case.

sole discretion, deems appropriate. 28 V.S.A. § 723(a). The inmate's continuation on furlough is "conditioned on the offender's commitment to and satisfactory progress in his or her reentry program and on the offender's compliance with any terms and conditions identified by the Department." *Id.* § 723(b). If the offender commits a "technical violation," which is defined as "a violation of conditions of furlough that does not constitute a new crime," DOC considers whether to impose a sanction. If DOC believes the conduct warrants an "interruption" or "revocation" of the furlough, DOC must hold "a Department Central Office case staffing review" to determine the length of the sanction. *Id.* § 724(b).

An offender whose community supervision furlough is revoked or interrupted for 90 days or longer based on a "technical violation" has a right to appeal DOC's determination to the Superior Court under Vt. R. Civ. P. 74. The appeal must be "based on a *de novo* review of the record," the appellant "may offer testimony," and "in its discretion for good cause shown, the court may accept additional evidence to supplement the record." *Id.* § 724(c)(1).

The law provides that "[t]he appellant shall have the burden of proving by a preponderance of the evidence that the Department abused its discretion in imposing a furlough revocation or interruption for 90 days or longer...." *Id.* The statute provides certain guideposts for analyzing whether the Department has abused its discretion:

> It shall be abuse of the Department's discretion to revoke furlough or interrupt furlough status for 90 days or longer for a technical violation, unless:

4

(A)   The offender's risk to reoffend can no longer be adequately controlled in the community, and no other method to control noncompliance is suitable.

(B)   The violation or pattern of violations indicate the offender poses a danger to others.

(C)   The offender's violation is absconding from community supervision furlough.  As used in this subdivision, "absconding" means:

(i)   the offender has not met supervision requirements, cannot be located with reasonable efforts, and has not made contact with Department staff within three days if convicted of a listed crime as defined in 13 V.S.A. § 5301(7) or seven days if convicted of a crime not listed in 13 V.S.A. § 5301(7);

(ii)   the offender flees from Department staff or law enforcement; or

(iii)   the offender left the State without Department authorization.

*Id.* § 724(d)(2).

The statute notes that the appeal is expressly:

limited to determine whether the decision to interrupt or revoke an offender's community supervision furlough status was an abuse of discretion by the Department based on the criteria set forth in subdivision (d)(2) of this section. The length of interruption or revocation may be a consideration in the abuse of discretion determination.

*Id.* § 724(c)(2).

Importantly from the Court's perspective, while the Court performs a *de novo* review of the record and can consider additional evidence, the overarching standard of review in the statute remains one of *abuse of discretion*.  The Court is not to substitute its judgment for that of DOC.  *See, e.g., Turner v. Roman Cath. Diocese*, 2009 VT 101, ¶ 14, 186 Vt. 396, 408 ("Under an abuse-of-discretion standard, we do not substitute our judgment for that of the trial court….").  An abuse of discretion is

5

established where "an agency has declined to exercise its discretion or has done so on untenable or unreasonable grounds." *In re Joyce*, 2018 VT 90, ¶ 12, 208 Vt. 226, 232 (internal quotation omitted); *see State v. Gurung*, 2020 VT 108, ¶ 36, 214 Vt. 17, 31.

With those guideposts in mind, the Court turns to the instant appeal.

III.    Analysis

A.    Jurisdiction

DOC asserted just prior to and at the hearing that the Court lacked jurisdiction because the alleged furlough violation amounts to a "new crime," which is a non-technical violation. Appellant counters that the hearing officer's findings show only that Appellant was found to have violated his furlough by being *cited* for a crime.

The first concern with DOC's motion is whether it is timely. The statute specifically states that objections to subject-matter jurisdiction are to be made within 14 days of the filing of a notice of appeal. DOC suggests that the language was not intended as a filing deadline. The statute is quite plain and directive, however: "The Department shall file an objection to subject matter jurisdiction within 14 days…." 28 V.S.A. § 724(c)(1). Nonetheless, whatever the intent, the Court agrees with DOC that objections to the Court's subject-matter jurisdiction can be made "at any time." *Poston v. Poston*, 161 Vt. 591, 592 (1993) (mem.); *see State v. Z.P.*, 2022 VT 49, ¶ 9 (Vt. Oct. 14, 2022) (subject-matter jurisdiction cannot be waived). It is highly doubtful that a statute can expand the Court's substantive

6

jurisdiction through use of a such a timing mechanism. The Court will not construe the statute to preclude DOC from raising the issue even though the 14-day period has lapsed.

On the merits of jurisdiction, Appellant is correct. The sole finding made by the hearing officer was that Appellant had been *cited* for a new offense. No doubt, a violation of Condition No. 1 can include the commission of acts that would amount to a crime. In this instance, however, the decision of the hearing officer, which is the Court's focus in this jurisdictional portion of the inquiry, simply made no such finding. The only violation specifically listed by the Hearing Officer was that Appellant had been cited for a crime. That amounts to a technical violation under the governing law. The Court has jurisdiction.[3]

B.     DOC's Exercise of Discretion

While the finding of a violation was based on the citation alone, the Case Staffing Committee (and this Court) have before it the entire administrative record. Similar to a criminal court at sentencing, the Committee (and this Court) may consider the full record in assessing the ultimate furlough decision. Indeed, it is plain that the Committee relied on the underlying affidavits describing Appellant's alleged criminal actions as that conduct is pointed out in the Committee's decision.

---

[3] DOC's citation of other cases where the underlying findings or pleas were to more generalized violations of Condition No. 1 are inapposite. There, because a Condition No. 1 violation can include criminal conduct and the findings made no specification, the courts could engage in a more probing analysis of the basis for the violation. Where, as here, the Hearing Officer chose to make a narrow determination, that choice controls for purposes of jurisdiction.

7

A review of that administrative record thoroughly supports DOC's determination, and Appellant has failed to persuade the Court that DOC abused its discretion. Defendant was cited for a serious felony/listed offense against an identifiable victim. Specifically, he was alleged to have violated a relief from abuse order. The incident report and affidavits of witnesses provides powerful evidence that Appellant likely violated that order. The victim, Appellant's ex-wife, had obtained a final order of protection to guard against Appellant being in her vicinity. The evidence shows he violated that proximal provision meant to ensure her safety. The violation of the abuse prevention order occurred only seventeen days after Appellant went on furlough. Further, Appellant has a criminal history that includes domestic assault, violation of an anti-stalking order, violation of an abuse protection order, aggravated disorderly conduct, and past violations of probation in New Hampshire. Lastly, the Staffing also noted that Appellant had a high domestic violence risk assessment score, and Appellant admitted at hearing that he had yet to engage in domestic violence programming in the community.

Given those determinations, the Court concludes that DOC acted within its discretion in deciding that the violation showed both that the Appellant could "no longer be adequately controlled in the community, and no other method to control noncompliance is suitable" and that his conduct "poses a danger to others," specifically his ex-wife. 28 V.S.A. § 724(d)(A)&(B). DOC's decision was, thus, tethered to appropriate considerations and did not go beyond its grant of authority.

8

*See In re Joyce*, 2018 VT 90, ¶ 12, 208 Vt. at 232 (internal quotation omitted); *State v. Gurung*, 2020 VT 108, ¶ 36, 214 Vt. at 31.

Similarly, DOC did not abuse its discretion in the length of the furlough interrupt. The record shows that Appellant is a high-risk offender, per his ORAS score, who was charged with a felony/listed offense that directly threatened an identifiable person. DOC employs a penological tool under Directive 430.11 to guide it in assessing appropriate responses to varying and multi-faceted furlough violations. The Court believes DOC's decision to rely upon such an instrument falls within its core penological mission and is entitled to some deference. *See, e.g, Town of Killington v. Dep't of Taxes*, 2003 VT 88, ¶ 5, 176 Vt. 70, 72 (deference afforded agencies on complicated matters "within the agency's area of expertise"). Based on the above objective factors, the Directive recommended a one-year interrupt. The Court cannot conclude the use of such an objective instrument falls outside of the discretionary judgment afforded DOC, and Appellant has not made that specific argument in this appeal.

Even if the Court were to consider the exercise of discretion in the absence of Directive 430.11's guidance, Appellant has not shown that a one-year interrupt would be an abuse of discretion in light of his criminal history of court-order violations, the nature of violation, the danger presented to his ex-wife, the short period it took for him to be charged with the violation of the protective order, his elevated risk assessments, and the documented need noted by Staffing for domestic violence programming. Given those record facts, the Court finds that DOC did not

exercise its discretion "on untenable or unreasonable grounds." *In re Joyce*, 2018 VT 90, ¶ 12, 208 Vt. at 232 (internal quotation omitted).

Nor does Appellant's hearing testimony compel a different result. DOC did not contest Appellant's testimony as to the positive initial steps he had been making on furlough, and the Court accepts his testimony. Those positive points, however, do not obviate the significant and felonious misconduct underlying this violation, the danger it presented to Appellant's ex-wife, Appellant's ORAS and domestic violence risk assessment scores, or his past history of violations of court orders. While the Court commends Appellant for the efforts he highlighted, the remaining record persuades the Court that DOC did not abuse its discretion in this matter.

Electronically signed on Monday, November 16, 2022, pursuant to V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge

Vermont Superior Court
Filed 11/16/22
Windsor Unit