Vermont Superior Court
Filed 08/09/24

SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-01396

Matthew Smedy v State of Vermont et al

Opinion and Order on Appeal of Furlough Interruption

In this Vt. R. Civ. P. 74 appeal, Vermont inmate Matthew Smedy challenges

a Department of Corrections ("DOC") case-staffing decision concerning a one-year

interruption of his furlough, pursuant to 28 V.S.A. § 724.  Appellant timely filed his

appeal.  The Court ordered pretrial briefing, and both sides submitted memoranda.

The Court held a hearing on the matter on August 8, 2024.  Appellant was present

at the hearing and was represented by Dawn Seibert, Esq.  Appellee DOC was

represented by Assistant Attorney General Robert Menzel.  Based upon this Court's

*de novo* review of the record and the credible evidence admitted at the hearing, the

Court makes the following determinations.

I      Background, Underlying Decisions, and Trial Court Hearing

Per the Agency Record filed with this appeal, Appellant is incarcerated for,

*inter alia*, aggravated domestic assault with a weapon.  Appellant was placed on

furlough in December 2022.  He was placed on GPS monitoring but allowed the

battery to die, which is a violation of the terms of his furlough.  In February 2023,

he was in the "exclusion zone" near his victim, and DOC determined to keep him on

1

GPS monitoring as a result. In August 2023, Appellant was seen smoking marijuana while driving erratically and was sanctioned by being sent to the Safe Driving Program. In September 2023, he was given a graduated sanction for a curfew violation. In early 2024, he was ordered to engage in a urinalysis ("UA") screening but failed to do so. At some point, a curfew was imposed as a means to get Appellant to do the UA.

In January 2024, Appellant's family became concerned about his mental state and condition and possible dangerousness based on his allegedly erratic behaviors. DOC asked him for a UA, which was positive for cocaine. He was ordered to engage in substance abuse screening/treatment. He went to such treatment in February, and they requested a second UA. That second UA tested positive for cocaine as well. The record states that the treatment provider (Treatment Associates) recommended weekly treatment and drug tests. Appellant did not comply.

On March 8, 2024, Appellant met with his probation officer. He urinated upon his arrival (despite advice from his mother to await the probation officer) and was unable to give a sample despite DOC giving him two hours to provide one. He signed a form indicating that he was refusing to give a sample. At around this same time, family was concerned as he was exhibiting delusional and paranoid thinking. He was secreting weapons in the home for protection and use against anyone who may "torment" him.

Thereafter, he was taken into custody by DOC for violating the terms of his supervision. Specifically, for violating Conditions 16, as to taking illegal drugs; and

24 (A, B, and E), as to mental health, substance abuse, and risk reduction programming. *See* Directive 430.11(D)(2)(a). He waived his right to a hearing (a matter in contest on appeal), and DOC staff then considered what sanction to impose. Through Directive 430.11, the DOC employs a standardized "grid" to assess the length of a person's interrupt.[1] Staff noted that Appellant is considered a "high risk offender" under both the ORAS and DVSIR measures. They determined this was a "significant" furlough violation under Directive 430.11. The record showed concerns regarding Appellant's ongoing dangerousness, and staff concluded that other methods of supervision had failed to address his needs and no other methods to control noncompliance are suitable. DOC imposed a one-year furlough interrupt.

Appellant appealed.

At the hearing on appeal, Appellant testified. He credibly stated that, when he was referred for treatment in February, he was told that his UA was negative and that Treatment Associates never informed him that it was recommending weekly treatment and UA. He also persuasively testified that, had he been so informed, he would have attended the sessions and done the UAs. Appellant also testified credibly that he has been going to a substance abuse group while in jail and has found that process helpful.[2] The evidence also showed that his family home

---

[1] Though the grid provides some standardization, the Directive also allows staff to consider other aggravating and mitigating factors in each case.

[2] Appellant also offered a letter from Treatment Associates supporting the testimony that he never heard from them regarding additional treatment. Appellee argues that, given Appellant's waiver below, he cannot establish "good cause" to consider such new evidence on appeal that might have been, but was not, provided to

3

remains a possible residence for him if he were released and that the residence had been approved for him in the past.

II.    Standards

Vermont law provides that DOC may release an inmate from prison and place him or her on community supervision furlough if the inmate has served his or her minimum sentence and agrees to comply with such conditions as DOC, in its sole discretion, deems appropriate. 28 V.S.A. § 723(a). The inmate's continuation on furlough is "conditioned on the offender's commitment to and satisfactory progress in his or her reentry program and on the offender's compliance with any terms and conditions identified by the Department." *Id*. §723(b). If the offender commits a "technical violation," which is defined as "a violation of conditions of furlough that does not constitute a new crime," DOC considers whether to impose a sanction. If DOC believes the conduct warrants an "interruption" or "revocation" of the furlough, DOC must hold "a Department Central Office case staffing review" to determine the length of the sanction. *Id*. §724(b).

An offender whose community supervision furlough is revoked or interrupted for 90 days or longer based on a "technical violation" has a right to appeal DOC's determination to the Superior Court under Vt. R. Civ. P. 74. The appeal must be "based on a *de novo* review of the record," the appellant "may offer testimony, and

DOC as an administrative matter. In this instance, the Court credits Appellant's testimony on the point. As a result, it has no need to admit or consider the additional evidence. The Court's consideration of the Appellee's argument will need to await a different case.

4

the Court, in its discretion and for good cause shown, "may accept additional evidence to supplement the record." *Id*. §724(c).

The law provides that "[t]he appellant shall have the burden of proving by a preponderance of the evidence that the Department abused its discretion in imposing a furlough revocation or interruption for 90 days or longer...." *Id*. The statute provides certain guideposts for analyzing whether the Department has abused its discretion:

> It shall be abuse of the Department's discretion to revoke furlough or interrupt furlough status for 90 days or longer for a technical violation, unless:
>
> (A)    The offender's risk to reoffend can no longer be adequately controlled in the community, and no other method to control noncompliance is suitable.
>
> (B)    The violation or pattern of violations indicate the offender poses a danger to others.
>
> (C)    The offender's violation is absconding from community supervision furlough.  As used in this subdivision, "absconding" means:
>
> (i)    the offender has not met supervision requirements, cannot be located with reasonable efforts, and has not made contact with Department staff within three days if convicted of a listed crime as defined in 13 V.S.A. § 5301(7) or seven days if convicted of a crime not listed in 13 V.S.A. § 5301(7);
>
> (ii)    the offender flees from Department staff or law enforcement; or
>
> (iii)    the offender left the State without Department authorization.

*Id*. §724(d)(2).

The statute notes that the appeal is expressly:

5

limited to determine whether the decision to interrupt or revoke an offender's community supervision furlough status was an abuse of discretion by the Department based on the criteria set forth in subdivision (d)(2) of this section. The length of interruption or revocation may be a consideration in the abuse of discretion determination.

*Id*. at §724(c)(2).

Importantly from the Court's perspective, while the Court performs a *de novo* review of the record and can consider additional evidence, the overarching standard of review in the statute remains one of *abuse of discretion*. The Court is not to substitute its judgment for that of DOC. *See, e.g., Turner v. Roman Cath. Diocese*, 2009 VT 101, ¶ 14, 186 Vt. 396, 408 ("Under an abuse-of-discretion standard, we do not substitute our judgment for that of the trial court…."). An abuse of discretion is established where "an agency has declined to exercise its discretion or has done so on untenable or unreasonable grounds." *In re Joyce*, 2018 VT 90, ¶ 12, 208 Vt. 226, 232 (internal quotation omitted); *see State v. Gurung*, 2020 VT 108, ¶ 36, 214 Vt. 17, 31.

With those guideposts in mind, the Court turns to the instant appeal.

III.    Analysis

Prior to engaging on the merits of the appeal, Appellant raises a significant argument concerning the efficacy of the waiver that was obtained by DOC concerning Appellant's right to a hearing before the agency.

No doubt, a person in Appellant's position can waive his right to a hearing, and no specific colloquy is required. Waivers are not uncommon, and the law permits them–so long as the proponent of the waiver can establish certain

6

prerequisites. *West v. N. Branch Fire Dist. #1*, 2021 VT 44, ¶ 52, 215 Vt. 93, 115 ("A party may 'waive virtually any right, constitutional or statutory….'" (quoting *State v. Hance*, 157 Vt. 222, 224 (1991)). Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation omitted). To establish a valid waiver, the proponent of the waiver must show that the waiver was "knowing, intelligent, and voluntary." *State v. Kandzior*, 2020 VT 37, ¶ 17, 212 Vt. 260 (internal quotation omitted); *see West*, 2021 VT 44, ¶ 52, 215 Vt. at 115 (noting same standard). The issue is judged based on the "totality of the circumstances." *In re Jankowski*, 2016 VT 112, ¶ 26, 203 Vt. 418, 432; *see United States v. Williams*, 321 F. App'x 486, 490 (6th Cir. 2009) (applying same standard in similar circumstances to those presented in this matter). In this instance, the Court concludes the purported waiver falls just shy of that standard.

Here, the record contains both a written waiver and a transcript of the oral discussion of the waiver between the hearing officer and Appellant. While nothing concerning is evidenced by the written waiver, the colloquy raises doubts in the Court's mind as to the validity of the waiver. First, after the hearing officer properly read the charges, Appellant then began to ask a question concerning the issues. The hearing officer did not let him finish the inquiry but offered Appellant information on what the officer interpreted was Appellant's concern. As a result, it is not fully clear exactly the concerns Appellant may have had regarding the waiver.

Second, Appellant showed some trepidation as to the scope of what he would be waiving. He indicated his potential agreement to waive a hearing regarding the

failure to do a UA but had questions on the greater allegations that he had failed to engage in other types of programming required by the terms of his supervision. The hearing officer stated his view that the failure to do the UA would amount to a violation of all three of the treatment requirements. While that may be true as a technical matter, a reading of the notice of suspension from the probation officer indicates that the charge as to mental health treatment and risk reduction programming was based on other alleged conduct.

Third, by, arguably, restating/expanding the grounds for the suspension, it is not clear whether Appellant understood that he could still seek to offer evidence of his compliance with or attempts to comply with other treatment/programming requirements aside from the failure to perform the UA on March 8, or whether such evidence would be wholly irrelevant to the proceeding. Such an inference is not unreasonable from the interchange between the hearing officer and Appellant. Additionally, such evidence was available. Indeed, Appellant credibly testified on appeal as to a factual disagreement with a key aspect of the record: whether he was told by Treatment Associates to engage in weekly treatment and UAs and refused to do so.

DOC may be correct that failing to do the requested UA, standing alone, may amount to a violation of conditions 24 A, B and E. The notice of suspension does not clearly read that way, however.[3] In sum, the colloquy below raises a significant

---

[3] The Court does not mean to suggest any intention by the hearing officer to mislead. The question in the Court's mind is solely the impact the information provided had on the mind of the decisionmaker, Appellant.

8

cloud for the Court as to whether Appellant's waiver of his right to a hearing as to all matters that were at issue was, in fact, knowingly and intelligently obtained. Where such a doubt exists, the Court cannot affirmatively conclude that a valid waiver exists in this case. *See In re Jankowski*, 2016 VT 112, ¶ 27, 203 Vt. at432.

IV.    Remedy

While asserting an invalid waiver, Appellant's preferred path is for the Court to go on and evaluate DOC's decision on the merits. Appellee counters that a remand is appropriate. The Court concludes that its determination of an invalid waiver is a primary matter that, once found, requires a remand. Further, despite Appellant's protests, this is not a case where there is nothing in the record that could possibly support DOCs determination as to the scope of the interrupt.

Given that and the lack of an effective waiver, the appropriate course is to require a second due process hearing where each side may present relevant evidence concerning the violations and the scope of the interrupt.

Having made that determination, the Court also notes that it has found convincing Appellant's testimony regarding the fact that Treatment Associates initially told him his test was negative and that Treatment Associates had not actually reached him to advise him of the need to engage in additional UAs and treatment.

V.    Conclusion

In light of the foregoing, to the extent DOC wishes to continue to hold Appellant for an additional period, Appellant is entitled to another due process

9

hearing. The Appellee's determination of a one-year interrupt is vacated without prejudice, and the matter is remanded to DOC for further proceedings consistent with this order. Given the important liberty interests attendant to Appellant's ongoing incarceration and his arguments as to the justification for the length of the interrupt, the Court orders that the hearing be expedited and completed within 7 business days.

Electronically signed on Friday, August 9, 2024, pursuant to V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge