Filed 04/21/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-04003

| | |
|---|---|
| Michael Immich,<br>     Appellant<br><br>     v.<br><br>Department of Corrections, State of Vermont,<br>     Appellee | FINDINGS OF FACTS AND<br>CONCLUSIONS OF LAW |

## RULING ON THE MERITS

This is a Rule 74 furlough revocation review case. Appellant Michael Immich has filed an appeal seeking review of a Department of Corrections ("DOC") case staffing decision to interrupt his community supervision furlough for one year. On January 13, 2026, this matter came before the Court for a hearing on the merits. Mr. Immich appeared by Zoom and was represented by Attorney Jill P. Martin, Esq. from the Prisoner's Rights Office. DOC was represented by AAG Rebecca J. Ronga. During the hearing, the Court heard testimony from Immich and two other witnesses, as well as argument from counsel. Immich asserts that his waiver of his right to a furlough revocation hearing was not valid, and therefore, there is insufficient evidence to support the imposed interrupt. The Court allowed the parties the opportunity to submit post-hearing memoranda, which were complete on February 12, 2026. In addition to its response to Appellant's waiver argument, DOC filed a motion to dismiss pursuant to Rule 12(b)(1) of the Vermont Rules of Civil Procedure, alleging improper venue and lack of jurisdiction.[1] The Court then took the matter under advisement for determination. Based upon a de novo review of the record and the credible evidence admitted at the hearing, the Court makes the following findings, conclusions and orders.

## Factual Background

Michael Immich is 32 years old and is serving a sentence for various offenses, including second degree aggravated domestic assault and VAPO. Admin. Rec. ("A.R.") at 1-2. On March 28, 2025, DOC placed Immich on community supervision furlough. A.R. at 2. At that time, Immich agreed to follow a number of Standard Conditions of Supervision, including "C03," which states: "I will not engage in threatening, violent, or assaultive behavior." A.R. at 9-11. In addition, Immich agreed to report to his supervising officer as directed and to not purchase,

---

[1] Given that the issue of whether venue in this Unit is proper was not raised until <u>after</u> the merits hearing in this matter, the Court considers any error to be waived, and the motion to dismiss for improper venue is denied.

possess, or consume illegal drugs. *Id.* DOC approved Immich to reside in Essex at the home of his aunt, Sondra Norton, who has raised him since he was three years old and is the victim in some of his underlying criminal cases. A.R. at 2.

On July 11, 2025, Probation and Parole Officer Alex Fontaine received a phone call from Ms. Norton, who was crying and scared, stating that Immich was engaging in violent behavior, screaming, smashing property, and threatening to burn the house down. Ms. Norton reported that she felt unsafe and no longer wanted Immich living there. A.R. at 13-15. Immich was due to report to Fontaine on that date, but failed to do so. He had failed to report on other occasions during the prior weeks and had admitted to illegal drug use. Fontaine requested that Immich be returned to the correctional facility for violation of furlough conditions. *Id.* When Immich reported on July 15, 2025, he was arrested and taken into custody. Immich was informed that he was being returned to jail and got very upset. He wanted to ask PPO Fontaine questions, and was told she would speak to him once he was calm and in restraints. The officers were able to calm Immich down and he was put into hand restraints. A.R. at 14. PPO Fontaine then "explained the process of his NOS and eventual staffing." *Id.* After she left the room, Immich became upset again, but was de-escalated by the transport officers and returned to Northwest State Correctional Facility ("NWSCF"). *Id.*

During the hearing on January 13, 2026, Immich testified that once he knew he was going back to jail he got very upset and did not know "what was actually going on." During transport, he asked the officers how long he would be back in jail, which they did not answer, and how to "find the fastest way through the process." The officers told him that waiving his "24-hour rights" would speed things up. Immich stated that he did so, "thinking it would make things faster for me." Immich testified that although he had taken illegal drugs in the hours before his arrest, he was lucid and "fine" during the transport. He remembered his conversation with the transport officers that waiving his 24-hour rights would make the process go more quickly.

On July 16, 2025, the day after he was lodged at NWSCF, Immich was given a hearing packet including the Notice of Hearing and Notice of Suspension Report. A.R. at 6-8. The Notice of Suspension Report identified the probation conditions that Immich was accused of violating. A.R. at 7. The Notice of Hearing informed Immich that he would appear before a Hearing Officer on July 21, 2025 for a hearing on the Notice of Suspension, and listed his rights and opportunities at the hearing. A.R. at 6. These included the right to be present, present evidence and cross-examination, and to have the assistance of a Hearing Assistant. Immich declined such assistance and signed the form at 2:13 p.m. *Id.* He also indicated that he had been advised of his right to have a written copy of the evidence against him at least 24 hours prior to the hearing. Immich waived this right and signed and dated the form. *Id.*

The following day, on July 17, 2025, Immich was given the opportunity to waive his right to the Notice of Suspension hearing. According to Immich, by that day, he was detoxing from the drugs he had taken prior to his incarceration and was not feeling well. He was woken up for the hearing and was not in his "right state of mind." He stated that he remembered his conversation with the transport officers, and agreed to waive his right to a hearing because he believed it would make the process go faster. When counsel asked Immich if he thought he after

2

signing the paperwork he would have a chance to present evidence, he answered, "Yes." Immich signed the NOS Hearing Waiver Form on July 17 at 9:29 a.m. A.R. at 4. Among the provisions of the form are that the offender has been advised of his right to appear at a Furlough Violation hearing regarding the alleged offenses, and that the offender waives that right. *Id*. The Form also states, "I realize that by waiving my right to appear or have a hearing on this matter I am admitting that a preponderance of the evidence supports being found guilty of alleged violation(s)." *Id*. The audio recording of the NOS Waiver Hearing was submitted as part of the administrative record on appeal. In it, Immich states his name and responds appropriately "yes" or "no" to the Hearing Officer's questions, including whether he was under the influence of any drugs or alcohol and that by waiving his right to a hearing, he was giving up the right to present evidence on his own behalf. After Immich's waiver of hearing and admission of guilt, his case was reviewed at a DOC case staffing on August 13, 2025 to determine the consequence for the violation. A.R. at 1-3. Immich was given a one-year interrupt, based on the significant violation, his high ORAS score, and the aggravating factor that he engaged in violent and threatening behavior with his aunt, who was his prior victim. A.R. at 3.

Since childhood, Immich has experienced learning challenges that make oral and reading comprehension difficult for him. He attended special programs and had aides to address these issues. Immich told the Court he sometimes has a hard time understanding verbal statements, but he does not always ask questions because he is embarrassed and feels he should know the information. Immich acknowledged that he did not ask questions when presented with during the NOS Hearing Waiver Form and NOS packet.

During the hearing, the Court also heard testimony from Immich's aunt, Sondra Norton, who described Immich's behavior that led her to call PPO Fontaine. Ms. Norton denied being afraid of Immich and stated that he was not violent and did not threaten her. In response, PPO Fontaine testified that, consistent with her incident report made the same date (A.R. at 13-15), Ms. Norton called her on July 11, 2025 and reported that Immich had smashed property in the home and threatened to burn down the house. During the call, Ms. Norton was crying and upset, and stated that she was scared. She asked Ms. Fontaine if field officers were available to come to the home to help address Immich's behavior.

On September 15, 2025, Immich filed this appeal of his furlough revocation pursuant to Rule 74.

Discussion

Under 28 V.S.A. § 724, "[a]n offender whose community supervision furlough status is revoked or interrupted for 90 days or longer for a technical violation shall have the right to appeal the Department's determination to the Civil Division of the Superior Court in accordance with Rule 74 of the Vermont Rules of Civil Procedure." 28 V.S.A. § 724(c)(1)). A "technical violation" is defined as "a violation of conditions of furlough that does not constitute a new crime." *Id*. § 722(4). It is by now well settled that "if the underlying facts of the violation compose or establish a new crime, then the violation is a nontechnical violation and falls outside the purview of Section 724." *Mears v. Vt. Dep't of Corr.*, No. 22-CV-04294, 2023 WL 2759752, at *2 (Vt. Super. Ct. Mar. 22, 2023) (quotation omitted). DOC argues that this Court lacks

3

jurisdiction because Immich admitted to engaging in threatening and violent behavior that would amount to criminal conduct, and therefore his violation was nontechnical under § 724. DOC also asserts that the one-year interrupt was not an abuse of discretion. Petitioner contends that his admission and waiver of his right to a suspension hearing were invalid, and thus the record contains insufficient evidence of criminality or any conduct that would support the one-year interrupt.

The Court concludes the record contains sufficient evidence to support a finding that Immich was returned to the facility for conduct that is criminal in nature. Immich's aunt, Ms. Norton, reported to PPO Fontaine that Immich was engaging in threatening and violent behavior, destroying property, screaming at his aunt and uncle, and threatening to burn the house down. Immich's actions caused fear in Ms. Norton and she was scared to return to her house. She told PPO Fontaine that she did not want Immich to remain there. Immich waived his right to have a hearing and review the evidence supporting the charges, and admitted the C03 furlough violation, that is, that he engaged in "threatening, violent, or assaultive behavior." The conduct Immich admitted to satisfies the elements of several potential criminal offenses.[2]

In light of the above, Immich challenges the validity of his waivers of his rights in this case. To be valid, it must be shown that "the waiver is knowing, intelligent, and voluntary." *West v. N. Branch Fire Dist. #1*, 2021 VT 44, ¶ 52, 215 Vt. 93 (quotation omitted). This standard is evaluated based on "the totality of the circumstances." *In re Jankowski*, 2016 VT 112, ¶ 26, 203 Vt. 418. As our Supreme Court has explained, "a concrete understanding of a right's meaning and the effect of waiving it is all that is required." *State v. Cleary*, 161 Vt. 403, 412, 641 A.2d 102, 108 (1994).

Here, the record demonstrates that Immich waived both his right to 24-hours' notice of the evidence of his alleged furlough violations and his right to have a hearing on the violations after being made aware of such rights and signing the written waivers. Immich testified that he wanted to "find the fastest way through the process." Transport officers accurately told him that waiving his "24-hour rights" would accomplish this. Immich further testified that he had this conversation in mind when he signed the waiver forms. Thus, there can be no doubt that Immich's first waiver was the product of an intelligent and knowing choice. Likewise, the NOS and case staffing process were explained to Immich by PPO Fontaine before he was returned to NWSCF. In addition, Immich's rights to a hearing on the furlough violations were listed on the Notice of Hearing and reviewed with him on July 16, the day before Immich began feeling the effects of drug withdrawal. These rights were read to Immich a second time during the NOS Waiver Hearing on July 17. The record of that hearing demonstrates Immich was able and alert enough to understand the Hearing Officer's questions and then respond "yes" and "no"

---

[2] Petitioner asserts that there is no admission or proof as to his state of mind, such that the elements of a crime like disorderly conduct are not met. However, "[i]ntent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." *State v. Dow*, 2016 VT 91, ¶ 8, 202 Vt. 616 (quotation omitted). Sufficient evidence of Immich's intent can be found under the circumstances, including his destruction of property and threats to burn the house down, which scared Ms. Norton to such an extent that Immich was no longer welcome in her home.

4

appropriately.[3]  While the Court understands that reading and even oral comprehension can be difficult for Immich, he is not asserting that he lacks the capacity to understand his right to a hearing.  Based on the totality of the circumstances, the Court finds that Immich had a sufficient understanding of his right to a hearing on the substance of the furlough violations, and made a knowing and intelligent waiver.  *See, e.g.*, *State v. Nemkovich*, 168 Vt. 8, 13, 712 A.2d 899, 902 (1998) (valid waiver established where trooper read defendant his rights regarding implied consent, "defendant acknowledged his understanding of those rights, and then signed a written waiver of the right to consult an attorney").[4]

Accordingly, the Court finds that Immich waived his right to hearing on the furlough violations and admitted his guilt, including that he engaged in conduct that amounts to a new crime.  Therefore, Immich's furlough violation is a nontechnical violation and the Court lack jurisdiction over this appeal pursuant to 28 V.S.A. § 724.

### Order

For the foregoing reasons, DOC's motion to dismiss is GRANTED.  This appeal is hereby DISMISSED for lack of jurisdiction.

Electronically signed on April 20, 2026 at 10:16 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

---

[3] Thus, unlike the situation in the case Petitioner relies on, *Smedy v State*, No. 24-CV-01396, 2024 WL 4508592, at *4 (Vt. Super. Ct. Aug. 09, 2024) (Tomasi, J.), the waiver colloquy raises no "significant cloud for the Court as to whether Appellant's waiver of his right to a hearing as to all matters that were at issue was, in fact, knowingly and intelligently obtained."

[4] To the extent Immich can be viewed as testifying otherwise during the hearing before the Court, we do not find such testimony wholly credible in light of the other record evidence presented.